# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:20-CV-00212-DJH-HBB

GLENN ODOM                                                    PETITIONER

VS.

ANNA VALENTINE, WARDEN                                        RESPONDENT

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND RECOMMENDATION

### BACKGROUND

Petitioner, Glenn Odom, ("Odom") filed a Petition for Writ of Habeas Corpus on March 24, 2020 (DN 1). The Respondent, Warden Anna Valentine, has filed a response (DN 18), to which Odom has replied (DN 29). Following Odom's reply, Odom filed a motion "to permit expert testimony" and to appoint counsel (DN 30). After filing his reply and previous motion, Odom then filed a motion to amend his petition (DN 31).

After reviewing the record and the memoranda submitted by the parties, the undersigned concludes an evidentiary hearing is not necessary to address the issues raised in Odom's § 2254 petition. For the reasons set forth below, the undersigned denies Odom's motion to permit expert testimony and appoint counsel, and the undersigned **RECOMMENDS**[1] that the Court **DENY** and **DISMISS** Odom's §2254 petition (DN 1). Furthermore, as explained at the conclusion of this recommendation, the undersigned **DENIES** Odom's motion to permit expert testimony and appoint counsel (DN 30), and the undersigned **GRANTS IN PART** and **DENIES IN PART** Odom's motion to amend (DN 31).

---

1   The District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter (DN 9).

<u>FINDINGS OF FACT</u>

The Court of Appeals of Kentucky utilized the Kentucky Supreme Court's facts in laying the foundation for their opinion. <u>Odom v. Commonwealth</u>, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *1 (Ky. Ct. App. Jan. 3, 2020). The undersigned adopts the same facts:

> During the evening and early morning of July 20-21, 2004, a number of people were using and selling drugs at a crack house in Louisville. Present at the house that night were Eddie Sickles, Yolanda Cooper, Amy Mott, Kenneth Williams, and Appellant [Odom]. (Footnote 1. Sickles and Cooper testified at trial. Though Amy Mott had participated in the prosecution at an earlier stage, she could not be located for trial. Kenneth Williams also could not be located.) According to witnesses, Ben Smith came and went from the house throughout the day, purchasing drugs from Appellant. Witnesses stated that Appellant was at the house to sell crack, and that he had been taking pills throughout the day. At some point in the early morning hours, Appellant dozed off. When he awoke, Appellant found that he was missing either drugs or cash.

> Appellant became angry, and told Eddie Sickles and Ben Smith to come outside with him; both men complied. An argument ensued, and Appellant accused Smith of stealing his drugs. Barry Ritchie, who was riding his bicycle to his girlfriend's house after eating at a nearby restaurant, passed by the scene. Ritchie knew Appellant and Sickles from the neighborhood, and was good friends with Smith.

> Ritchie testified that, when he saw the argument, he tried to calm Appellant. However, just moments later, Ritchie witnessed Appellant shoot Ben Smith once in the stomach. Ritchie quickly jumped on his bike and rode off after the first shot. As Ritchie rode away, he heard one or two additional gunshots. Sickles testified that he witnessed Appellant shoot Smith twice, killing him.

> Yolanda Cooper heard the shots from inside the house, and rushed to the window, thinking that Appellant had been shot. She then heard Appellant ask Sickles to help him move the body. Cooper testified that

2

Appellant came into the house a short time later and said, "I just shot that [n****r] in the back. Ya'll better not say nothin'."

According to Cooper, everyone at the house scattered, and she and Mott made their way to another crack house. Cooper testified that when Appellant arrived, he pistol-whipped Amy Mott. The Commonwealth introduced photographs depicting Mott's injuries.

Esther McWhorter, Eddie Sickles' mother, testified that, at approximately 4:30 the same morning, Appellant came to her house in a "fit of rage." McWhorter testified that Appellant threw a brick through her bathroom window, completely shattering it, and that he threw a rock through her front room window, damaging it. McWhorter also testified that Appellant threw a flower stand through the window of her car.

Detective Mike Hableib[2] was the lead detective investigating Smith's murder. According to Detective Hableib, Appellant quickly became the prime suspect. A Jefferson County grand jury indicted Appellant on charges of murder (Ben Smith), second-degree assault (Amy Mott), and second-degree criminal mischief (Esther McWhorter's vehicle and other property). (Footnote 2. The trial court granted a directed verdict on a second charge of criminal mischief.) Despite a public search by the Louisville Metro Police, Hableib testified that police were unable to locate Appellant.

Six weeks after Smith's murder, Appellant was arrested in St. Joseph County, Indiana on unrelated robbery charges. After Appellant was tried and convicted in Indiana for robbery, the Commonwealth sought temporary custody under the Interstate Agreement on Detainers (IAD), and obtained custody of Appellant on January 6, 2006. Pursuant to the speedy trial requirements of the IAD, the circuit court held a trial beginning on April 25, 2006.

---

[2] Confusion has brewed between the state courts and the parties regarding the spelling of Detective Halblieb's name. The Kentucky Court of Appeals and Odom include the first "L" and uses "ie". In contrast, the Kentucky Supreme Court and Defendant spells the Detective's name without the first "L" but differ on whether it is "ie" or "ei". Looking to the indictment, it identifies Detective Halblieb as a witness and spells his name including the first "L" and contains "ie" (DN 18-2 PageID 136). As such, the undersigned will utilize this spelling (Halblieb).

In the course of that trial, Amy Mott and Yolanda Cooper, who were both in custody, were in a holding area with Appellant at the courthouse. According to Cooper, Appellant attempted to speak with Cooper and Mott, telling them "you know I didn't do it" and "keep ya'll's mouth shut." Cooper and Mott each gave a statement to Detective Hableib. This incident resulted in a grand jury indicting Appellant on two counts of intimidating a participant in the legal process. Ultimately, these counts were tried together with the counts in Appellant's first indictment. In addition, though not fully developed in the record, Appellant was also charged with attempted escape while in custody.

During Appellant's April 2006 trial, he expressed frequent dissatisfaction with his appointed public defenders, stating that he disagreed with many of their decisions, and accusing them of working with the Commonwealth to obtain a conviction. This led to the circuit court declaring a mistrial, and an attempt by Appellant to obtain private counsel. However, Appellant was unable to do so, and the Louisville Metro Public Defender reappointed Appellant's original attorneys.

Further conflicts with the public defender's office arose, and outside counsel eventually agreed to represent Appellant. Appellant remained unsatisfied with his new counsel, repeating many of the complaints he had with his former attorneys. This resulted in a hybrid counsel arrangement, whereby Appellant's attorney would conduct voir dire and make objections, while Appellant would deliver the opening statement and closing argument, cross-examine the Commonwealth's witnesses, and testify in a narrative fashion during the defense's case-in-chief.

Appellant's second trial commenced on December 12, 2007. As part of the Commonwealth's case-in-chief, the jury heard testimony from the medical examiner, Ben Smith's mother, Barry Ritchie, Eddie Sickles, Esther McWhorter, Yolanda Cooper, and Detective Hableib. Appellant testified in a narrative fashion. He admitted to becoming angry and vandalizing Ms. McWhorter's house. However, he denied all involvement in Ben Smith's murder, and stated he was not present when Smith was killed. Appellant suggested that Eddie Sickles had killed Smith.

> The jury returned guilty verdicts on charges of murder, second-degree
> assault, second-degree criminal mischief, and two counts of
> intimidating a participant in the legal process. The jury recommended
> a sentence of life imprisonment for Appellant's murder conviction,
> which the circuit court imposed. The court ordered all of Appellant's
> other sentences to run concurrently with the life sentence.

Id. at *1-7 (quoting Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS

30, at *1-2 (Ky. Mar. 18, 2010)) (expletive alteration in Court of Appeals' opinion) (footnote

added). Ultimately, "[t]he Supreme Court of Kentucky affirmed Odom's convictions for murder,

second-degree assault, and second-degree criminal mischief but reversed Odom's convictions for

the two counts of intimidating participants in the legal process, and remanded the case for retrial

on those two charges only." Id. at *7. Afterwards, "Odom filed multiple motions—both with and

without the assistance of counsel—including the one pursuant to RCr 11.42, as supplemented and

amended, which was denied by the trial court" and then was appealed to the Court of Appeals of

Kentucky. Id. After review of eight different allegations of error, the Court of Appeals found each

claim unpersuasive and affirmed the state court's denial of Odom's Rule 11.42 motion. Id. at *32.

## Odom's Petition

Following the Court of Appeals' opinion affirming the state court's determination, Odom

filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on March 24, 2020 (DN 1).

In Odom's petition, he asserts sixteen different grounds of error (Id. at PageID 5-12). These claims

are the result of alleged constitutional violations, unreasonable or unsupported evidentiary rulings,

and conflicted actions by his counsel (Id.). While the Warden responded to these claims based

upon the categorization of the allegations (DN 18 PageID 122-132), such as lumping all ineffective

assistance of counsel claims together (Id. at 130-32), the undersigned will list each claim individually for the sake of clarity.

First Claim of Error

In his petition, Odom's first claim of error was his denial of due process and equal protection as a result of "the trial court refus[ing] to order a competency hearing" (DN 1 PageID 5). According to Odom, there were facts present in this matter which created "a substantial need for a mental evaluation" (Id.). Defendant asserts the Kentucky Supreme Court's determination upholding the denial of a motion for a competency evaluation was reasonable and followed established law because:

> Mr. Odom knew the charges against him and the range of penalties; Mr. Odom could communicate with his attorney about his rights and options, understood the presumption of innocence, understood he had the right to a jury trial, understood he could negotiate a settlement with the Commonwealth, and understood that the burden of proof was on the Commonwealth; Mr. Odom stated he had no mental disorders requiring treatment and that it would be a waste of time and money to order a mental evaluation; and the trial court found no reasonable grounds to believe Mr. Odom was incompetent to stand trial.

(DN 18 PageID 122). Interestingly, in his reply memorandum, Odom concedes that "the [Kentucky] Supreme Court was very reasonable denying this claim[,]" and Odom was unsure "why [his] appellate counsel decided to raise this issue" (DN 29 PageID 715-16).

Second Claim of Error

Next, Odom claims he was denied a fair trial and due process "when the trial court refused to make the Commonwealth take down a photo mischaracterizing . . . the victim as a child" and, as such, the trial court "acquiesc[ed] in prosecutor[ial] misconduct" (DN 1 PageID 6). In contrast,

6

Defendant argues that the Kentucky Supreme Court's determination was reasonable, as "the photo was taken when the victim was 17 years old, it was used during the opening statement, and it was introduced into evidence during the testimony of the victim's mother" (DN 18 PageID 123-24). Further, "any possible error was harmless as the photograph was admitted into evidence and would have been available to the jury during its deliberations" (Id. at PageID 124). Finally, Defendant argues that Odom "makes no argument that the Supreme Court of Kentucky improperly applied United States constitutional law to the facts of this case" (Id.). Again, Odom backs off on this claim in his reply, claiming that he believes "this particular violation does not violate 'clearly established federal law' and most likely would not warrant reversal alone" (DN 29 PageID 717). Instead, Odom will address the claim in his "cumulative error" portion of his argument (Id.).

Third Claim of Error

Third, Odom argues he was denied his right to a fair trial, right to an impartial jury, and equal protection, as a result of the Commonwealth striking two jurors for "non-race neutral reasons" in violation of <u>Batson v. Kentucky</u>[3] (DN 1 PageID 6). In his reply, Odom argues that both the trial court and defense counsel did not see the potential jurors sleeping during voir dire, even after the prosecution initially tried to strike them for cause based on that ground (DN 29 PageID 718-19). By allowing the Commonwealth to use peremptory strikes to remove those potential jurors, "without explaining why it found the prosecution[']s explanation sufficiently race-neutral[,]" the Kentucky Supreme Court improperly affirmed the trial court's determination that was erroneous and contrary to clearly established federal law (Id.).

---

3    476 U.S. 79 (1986).

Defendant instead argues that the Kentucky Supreme Court properly rejected the <u>Batson</u> claim because the Commonwealth had presented a race-neutral reason for striking the three African-American jurors, and Odom had not carried the burden of proving purposeful discrimination (DN 18 PageID 125-26). Thus, Odom "has failed to prove that the Supreme Court of Kentucky wrongly applied clearly established federal law in an objectively unreasonable manner" (<u>Id.</u> at PageID 126-27).

## Fourth Claim of Error

Next, Odom's fourth claim is centered upon the presentation of "Most Wanted" posters of Odom during the trial (DN 1 PageID 6). Odom claims these posters prevented his right to a fair trial and due process (<u>Id.</u>). Defendant argued that Odom needed to present an evidentiary ruling that violated due process so egregiously that Odom was denied fundamental fairness, but Odom has not met such a high bar (DN 18 PageID 127-28). Further, Odom did "not carry his burden to show that the Supreme Court of Kentucky unreasonably applied United States Supreme Court precedent" (<u>Id.</u> at PageID 128). Like his second claim, Odom succinctly surrenders this individual claim of error by stating that "this issue does not violate 'clearly established federal law'" but would instead argue the issue in his "cumulative errors" section (DN 29 PageID 719).

## Fifth Claim of Error

Fifth, Odom asserts that he was denied a fair trial and due process when the Commonwealth was purportedly allowed "to ask about and place before the jury facts about an unrelated charge of escape" (DN 1 PageID 6-7). While the Supreme Court of Kentucky stated that the mentioning of the escape charge was prejudicial, Odom's reply notes that the Court found it was not unduly

prejudicial because of other uses for the information, but Odom contends that this introduction was contrary to or an unreasonable application of clearly established law (DN 29 PageID 720).

Like the last evidentiary ground, Defendant argues that Odom has not met the bar of proving a due process violation that is so severe that it prevents fundamental fairness (DN 18 PageID 127). Instead, Defendant asserts that the evidence against Odom was strong and Odom does not sufficiently argue that the Kentucky Supreme Court applied contrary law or unreasonably applied precedent (Id. at PageID 127-28).

Sixth Claim of Error

Sixth, Odom's right to a fair trial and due process were purportedly violated when "the trial court impermissibly allowed the Commonwealth to place before the jury a pending robbery case in Indiana[—]a crime that had no nexus to the crimes charged" (DN 1 PageID 7). In his reply, Odom acknowledges this charge was purportedly used as evidence of flight or guilt (DN 29 PageID 721). Odom argues a violation of due process because Odom claims that "the detectives and prosecutor presented a great deal of false and fabricated testimony" and, while the trial court did give the jury an admonition about the limited scope of the evidence, "it's axiomatic that the admonition to the jury could not unring the bell" (Id.).

Continuing from the last two claims, Defendant argues that Odom has not met the bar of proving a due process violation that is so severe that it prevents fundamental fairness (DN 18 PageID 127). In contrast to Odom's assertions, Defendant takes the position that Odom does not sufficiently argue that the Kentucky Supreme Court applied contrary law or unreasonably applied precedent (Id. at PageID 127-28).

Seventh Claim of Error

Subsequently, Odom alleges he was denied his constitutional and statutory right to a fast and speedy trial when "the trial court first ignored and then denied his pro-se motion asserting these rights" (DN 1 PageID 7). In his reply, Odom explains this claim is premised upon the trial court's alleged statement that Odom "waived his rights to a fast and speedy trial although [Odom] insisted that he did not" when Odom was considering whether to fire his court appointed counsel and hire private counsel (DN 29 PageID 722). When the Kentucky Supreme Court denied relief, especially in light of the two-year delay to trial and Odom's insistence on his speedy trial right, Odom claims that was an unreasonable application of clearly established law (Id. at PageID 722-23).

Defendant, on the other hand, argues that the Kentucky Supreme Court "properly determined that Mr. Odom's speedy trial rights were not violated" (DN 18 PageID 128). Defendant relies heavily on the factual determinations by the Kentucky Supreme Court, specifically the Court's use of the Barker v. Wingo[4] factors, to claim that the decision was aligned with federal law and United States Supreme Court precedent (Id. at PageID 128-29).

Eighth Claim of Error

Next, it is Odom's assertion that he was denied his right to confrontation when Amy Mott's prior testimony was presented to the jury, but Ms. Mott was not subject to cross-examination (DN 1 PageID 7). Alternatively, Odom argues in his reply that "the trial court erred in failing to direct a verdict of acquittal on the assault [in the second] degree charge" (DN 29 PageID 724). Odom spends several pages arguing the testimony given by Yolanda Cooper and what Odom

_____

4    407 U.S. 514 (1972).

asserts is information that reduces the credibility of Cooper's testimony, as well as purported inconsistencies with the testimony from Amy Mott (Id. at PageID 724-28). Odom claims that "Mott mad herself unbailable by being arrested on criminal charges in Nevada, which deprived [Odom] of his right to confront his accuser[,]" and the Kentucky Supreme Court's opinion holding "it was reasonable for a jury to find guilt based on Yolanda Cooper's statement" was unreasonable and violated clearly established law (Id. at PageID 728).

Defendant recounts that "[t]he Supreme Court of Kentucky examined Mr. Odom's argument and agreed that prejudicial error occurred" (DN 18 PageID 129). "As a result, the Court reversed Mr. Odom's two convictions for Intimidating a Participant in the Legal Process . . . [and] Mr. Odom received the relief . . . he requested" (Id. at PageID 129-30). However, Defendant did not discuss the assault in the second degree conviction.

Nineth Claim of Error

Odom argues that he was denied "conflict free counsel" when Odom's trial counsel purportedly alerted the trial court to an actual conflict of interest, and the trial court failed to act on this conflict (DN 1 PageID 7-8). Odom's reply clarifies that this purported conflict was derived from Odom having a conflict with the public defender's office and trial counsel's wife was a public defender during the case (DN 29 PageID 731). The Kentucky Court of Appeal's determination to uphold the trial court's lack of remedy and the denial of the RCr 11.42 motion was unreasonable and contrary to clearly established law (Id. at PageID 731-33). Additionally, Odom asserts that "[a]ny vague 'waiver' by Odom was constitutionally unacceptable because the trial court never

clearly explained to Odom exactly what entails a waiver of conflict-free counsel . . . [and] [a]ny waiver was not made knowingly and intelligently, with 'eyes wide open'" (Id. at PageID 733-34) (citation omitted).

Defendant relies upon the Kentucky Court of Appeals' determination that "much of Mr. Odom's argument was based upon an incorrect reading of the record, that Mr. Odom explicitly waived the claim, and that counsel did not have a conflict of interest" (DN 18 PageID 130). Additionally, Defendant claims that Odom had not received ineffective assistance of counsel and echoed the Court of Appeals in asserting that "Odom ha[s] completely failed to meet the prejudice prong on any of the claims" (Id.).

Tenth Claim of Error

The most prominent of Odom's claims is his tenth claim of error. Odom asserts that his trial counsel during voir dire "conceded Odom's guilt to the charges of murder, second degree assault[,] and the two counts of criminal mischief" (DN 1 PageID 8). In his reply, Odom "insist[s] that what was said by [his trial counsel was] '. . . Mr. Butler [the Assistant Commonwealth's Attorney] mentioned murder, assault 2nd, criminal mischief, and intimidating a witness in the legal process. Mr. Odom denies that charge . . ." (DN 29 PageID 735) (emphasis omitted, ellipses in original). "The record appar[e]ntly appears to skip – with a quick white flash when counsel said the words 'murder, assault 2nd, criminal mischief.' Such an omission is obvious [only] because counsel is walking to the right when speaking" (Id.). Odom supports this assertion by arguing that neither the Assistant Commonwealth's Attorney, counsel, nor the court disputed what Odom alleged (Id. at PageID 735-36). By his account, Odom asserts that "it is reasonable to conclude that the jury heard counsel say, 'my client is guilty of murder, assault second, and two counts of

criminal mischief, but not the two counts of intimidating a witness" (Id. at PageID 736). Odom requests a reversal of his convictions or, in the alternative, he seeks an evidentiary hearing (Id. at PageID 740).

Defendant details that the Kentucky Court of Appeals found no concession existed during voir dire (DN 18 PageID 130). Even then, Defendant argues that Odom has not sufficiently asserted that the Court of Appeals' determination was contrary to or an unreasonable application of the clearly established law under Strickland v. Washington, 466 U.S. 668 (1984) (Id. at PageID 130-32).

## Eleventh Claim of Error

Subsequently, Odom also argues that he was denied effective assistance of counsel, his right to a fair trial, and due process, as a result of his trial counsel's "fail[ure] to contemporaneously object to and preserve for appeal the jury Instruction No. 2A, Second Degree Assault[,]" as it contained an error which deprived Odom of his right to a unanimous jury verdict (DN 1 PageID 9). Odom, in his reply, claims that his trial counsel did not submit curative jury instructions, as required by RCr 9.54, but instead only submitted the defense's jury instructions (DN 29 PageID 741). The failure to submit these curative instructions, Odom contends, allowed the jury to find Odom guilty of assault in the second degree through a *mens rea* of wantonly (Id. at PageID 742). "In no realm of competence can counsel's failure to object as set forth above ever be reasonable, as it permitted a conviction in violation of [the Kentucky Constitution, the Kentucky Revised Statues, and clearly established law]" (Id. at PageID 743). And when the Kentucky Court of Appeals denied relief, Odom claims that violated clearly established law and was unreasonable (Id. at PageID 744).

Defendant argues that the Kentucky Court of Appeals reasonably found that Odom failed to meet the prejudice requirement under the Strickland analysis for ineffective assistance of counsel (DN 18 PageID 130). Further, "the Court of Appeal determined that counsel did actually object to the instructions as desired by Mr. Odom" (Id.).

Twelfth Claim of Error

Related to his eleventh claim, Odom's twelfth claim asserts a denial of the right to effective assistance of counsel, right to a fair trial, right to present a complete defense, and due process when trial "counsel failed to contemporaneously object to the fatal variance of the charged offense of second degree assault in the indictment into the jury instructions, failing to preserve the error for appeal" (DN 1 PageID 9). Odom's reply comments, "If Odom committed the crime intentionally as the evidence law of the case establishes, then it was reversable error for the jury to be instructed that it could find Odom guilty having committed the assault of 'pistol whipping' Amy Mott wantonly" (DN 29 PageID 745). It is Odom's contention that "[h]ad counsel properly objected to the erroneous jury instruction as being violative of Odom's right to a unanimous verdict, there is a reason[able] probability that he would not have been convicted" (Id.).

Identical to the last claim of error, Defendant asserts that the Kentucky Court of Appeals reasonably found that Odom failed to meet the prejudice requirement under the Strickland analysis for ineffective assistance of counsel (DN 18 PageID 130). Further, "the Court of Appeal determined that counsel did actually object to the instructions as desired by Mr. Odom" (Id.). Therefore, Odom does not meet the requirements of showing that the Court of Appeals' determination was contrary to, or an unreasonable application of, clearly established law (Id. at PageID 131-32).

Thirteenth Claim of Error

Claim number thirteen, unlike the preceding claims, contains five different sub-claims of error, making it one of the more monumental claims (DN 1 PageID 10). The umbrella claims of error are the denial of the right to effective assistance of counsel, right to a fair trial, right to present a complete defense, and due process, but each sub-claim details different instances which Odom alleges is ineffective assistance of counsel (Id.). The five instances are:

> [C]ounsel operating under the actual conflict stated in Ground One:
>
> 1.     failed to file critical pretrial motions,
>
> 2.     refused to interview and subpoena witnesses for the defense,
>
> 3.     refused to object to the trial court's refusal to permit Odom to place his defense before the jury by complete testimony but by narrative form only failing to preserve the issue for appeal,
>
> 4.     refusing to direct examine Odom to adduce relevant facts concerning the circumstances and events leading up to and surrounding the death of Ben Smith, and
>
> 5.     failed to object with preservation the trial court's error in denying the jury to question Odom as it permitted the jury to do with all witnesses[.]

(Id.).

In his reply, Odom then begins to examine what substantiates his purported claims of error. Attempting to counter the state courts' determinations, Odom asserts that "the hybrid counsel arrangement required Odom['s] attorney to conduct voir dire, make objections, file all appropriate motions, and jury instructions" (DN 29 PageID 747). Thus, "[t]here was nothing that required or for that matter authorized Odom to w[i]eld the subpoena power of the court" (Id.). Additionally,

15

"[c]ounsel was required to file motions and Odom had requested him to file a motion to suppress Yolonda Cooper's faulty transcribed statement, because of the missing, destroyed or otherwise conveniently unavailable tape recording of her statement" (Id. at PageID 747-48). Further, Odom requested his trial counsel file a motion to dismiss the criminal mischief charge, "on the premise that no one ever said [Odom] committed this offense . . . [and this] charge was a fabrication by Detective Halblieb . . ., detective Tony Finch, detective Shawn Seabolt, and their supervisor detective Gary Huffman" (Id. at PageID 749-50). Next, Odom also requested counsel to move to dismiss the assault charge due to Mott telling law enforcement that she was attacked by "other female junkies in the crack house," and Mott never identified Odom as the person who assaulted her (Id. at PageID 750). Had this charge been dismissed, Odom posits that evidence of Mott's injuries would not have been introduced and prejudicially support the murder charge (Id.).

As for the witnesses, Odom purportedly requested his counsel to interview Yolonda Cooper regarding her statement given to law enforcement, but counsel did not do this (Id. at PageID 751). Because of this, Odom asserts that this failure led to Cooper being "allowed [] to testify without impeachment to a coached version of events" (Id.). Additionally, counsel allegedly promised Odom that the detectives in the case would all be subpoenaed to appear at trial, but no detectives were subpoenaed (Id.). Odom also alleges that he requested his counsel attempt to speak with Barry Richie, but Odom claims his counsel refused (Id. at PageID 751-52). During trial, several purported inconsistencies were uncovered regarding Mr. Richie's testimony (Id. at PageID 752). Further, Odom sought to interview the detective who interviewed Eddie Sickles and attempt to present a defense focused on another person committing the acts (Id. at PageID 753).

Third, Odom "invoked his right to testify at trial" but by being limited to a "narrative form," Odom claims he was denied "th[e] unqualified right . . . to place his version of the events before the jury and his right to present a defense" (Id. at PageID 756). "The refusal of the trial court to allow Odom to testify without restriction or condition was a structural defect affecting the framework within which the trial proceeds" (Id. at PageID 757). Tangentially, Odom claims it was ineffective for his trial counsel to not object to this purported error (Id.).

Next, Odom argues that his counsel was ineffective by failing to ask certain questions when Odom was testifying (Id. at PageID 758). The five questions presented by Odom were:

1. Why didn't you turn yourself in? (The state told jury that flight is evidence of guilt)

2. Why were you charged with escape? (State told jury that flight is evidence of guilt and Odom did not try to escape from the 5th floor)

3. How drunk and high was Yolanda Cooper this night? (The jury needed to know that Cooper passed out in her own urine)

4. Are there any reasons why Barry Richie would be seeking revenge? (Odom, Barry Richie, and Brandon Cureton were arrested three (3) weeks prior)

5. What as Eddie Sickles acting like on this night due to alcohol and crack intoxication? (Due to Sickles inaccurate transcripts this question needed to be asked – to explain why he first told police he had no knowledge of any murder).

(Id.) (underlining omitted). Odom relies upon his prior arguments of conflict with his counsel to assert that this was another instance in which counsel was refusing to continue and acted adversarial (Id.).

Finally, Odom alleges that his trial counsel was ineffective when they did not object after the jury was denied the ability to submit questions for the defendant (Id. at PageID 759).  This inability to question Odom "constructively denied Odom his unqualified right to testify and place facts before the jury in defense" (Id.).  An issue Odom presents is that the jury was previously allowed to ask questions to the prosecution's witnesses (Id.).  Thus, "Odom's incomplete, and unfairly restricted, testimony did not serve it's [*sic*] function as a vehicle for determining guilt or innocence, and his criminal punishment is clearly fundamentally unfair" (Id. at PageID 761).

As Odom's initial petition simply listed the five sub-claims, Defendant presents a similar response as to the other ineffective assistance of counsel claims.  Defendant argues that the Kentucky Court of Appeals reasonably found that Odom failed to meet the prejudice requirement under the Strickland analysis for ineffective assistance of counsel (DN 18 PageID 130).  Further, the "Court of Appeal held that Mr. Odom's complaints simply had no merit" (Id. at PageID 131).  Therefore, Odom does not meet the requirements of showing that the Court of Appeals' determination was contrary to, or an unreasonable application of, clearly established law (Id. at PageID 131-32).

Fourteenth Claim of Error

Odom's fourteenth claim also alleges ineffective assistance of counsel due to trial counsel "fail[ing] to move for a mistrial and preserve the matter of perjury for appeal at the time [when] during cross-examination of [Detective] Halblieb[,] it was discovered that he falsely testified before the grand jury to get Odom charged with numerous offenses" (DN 1 PageID 11).  In his reply, Odom argues that Detective Halblieb's "statements to the grand jury were materially false as he admitted, and KRS 523.020(1) neither authorizes nor exempts [Detective] Halblieb from

18

committing perjury during grand jury proceedings in order to secure an indictment on 'any and every crime that happened in the area'" (DN 29 PageID 764).  Odom includes a block quotation from a Ninth Circuit case, which reads:

> the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached.

(Id. at PageID 765) (quoting United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974)).  Odom argues that both the prosecution and defense counsel had an affirmative duty to rectify perjured testimony, but neither did (Id. at PageID 766).

Defendant argues that the Kentucky Court of Appeals reasonably found that Odom failed to meet the prejudice requirement under the Strickland analysis for ineffective assistance of counsel (DN 18 PageID 130).  Additionally, the "Court of Appeals held that Detective Ha[l]blieb did not commit perjury before the grand jury, and Mr. Odom also had the opportunity to question Detective Ha[l]blieb concerning his grand jury testimony" (Id. at PageID 131) (footnote omitted).  Therefore, Odom does not meet the requirements of showing that the Court of Appeals' determination was contrary to, or an unreasonable application of, clearly established law (Id. at PageID 131-32).

### Fifteenth Claim of Error

The penultimate claim of error argues that "appellate counsel failed to master the record on appeal[,]" and the failure to master the record led to the failure to bring certain grounds and subsequently procedural default those claims (DN 1 PageID 11).  Thus, Odom argues that he was denied effective assistance of appellate counsel and due process (Id.).  Odom's reply claims that

while the trial court's determination noted that appellate counsel was successful in obtaining a reversal on two convictions, Odom asserts that this was possible because appellate counsel misled the Kentucky Supreme Court, and Odom had to file a *pro se* motion to correct this alleged error (DN 29 PageID 768-69). Further, by appellate counsel not arguing Claims Nine, Ten, Eleven, Twelve, parts of Thirteen, and Fourteen on appeal, appellate counsel has procedurally defaulted these grounds for federal review (Id. at PageID 769). To substantiate the claim that his appellate counsel was deficient, Odom argues that had these arguments been presented, "there is a reasonable probability that the appeal would have been different" (Id. at PageID 770-71).

Similar to the last several responses, Defendant argues that the Kentucky Court of Appeals reasonably found that Odom failed to meet the prejudice requirement under the Strickland analysis for ineffective assistance of counsel (DN 18 PageID 130). Defendant also relies upon the Kentucky Court of Appeals' determination that there was "absolutely no reason to question appellate counsel's selection of claims for direct appeal" (Id. at PageID 131). Therefore, Odom does not meet the requirements of showing that the Court of Appeals' determination was contrary to, or an unreasonable application of, clearly established law (Id. at PageID 131-32).

Sixteenth Claim of Error

Finally, Odom's last claim of error again focuses on alleged ineffective assistance by trial counsel, specifically when "counsel refused to ask the jurors any of Odom's questions during voir dire, refused to object when Odom was denied his right to attend bench conferences, and refused to object when all of Odom's pro-se motions were ignored by the court" (DN 1 PageID 12). In his reply, Odom later discusses how the trial court denied relief because Odom had not listed any questions or *pro se* motions in his RCr 11.42 and 60.02 motions, but Odom claims that the

supplement to the 11.42 motion "incorporated all grounds in his initial Rcr 60.02 and issue # 12 . . . secs. a, b, c, d, e; [i]ssues # 19 and 20 . . .; [a]nd issue #22 . . . in his initial Rcr 11.42 which referenced the facts and citations to the record, of questions for counsel to ask on voir dire and motions that were ignored by the court" (DN 29 PageID 772) (quotations omitted).

Odom went on to then list all the ignored *pro se* motions, the questions Odom's counsel should have asked, and a discussion to the denial of Odom's request to conduct voir dire (Id. at PageID 772-75). The *pro se* motions were to suppress Yolanda Cooper's testimony unless a recorded statement was produced, to dismiss the criminal mischief charge, to dismiss the assault in the second degree charge, to dismiss the charges of intimidating a participant in the legal process, and to dismiss the indictment as the result of speedy trial violations (Id. at PageID 772-73). The questions that counsel should have purportedly asked on behalf of Odom were: 1) "Does anyone have a dislike towards the African American race?"; 2) "How many [jurors] would reject [Odom's] side of facts or dislike him because [he] sold drugs?"; 3) "How many [jurors] have police in their family?"; 4) "How many [jurors] would absolutely believe a police over a civilian?"; and 5) "Do you believe it's possible for detectives to lie and/or coerce witnesses?" (Id. at PageID 774-75). Counsel allegedly declined to ask these questions because they were "not appropriate" (Id. at PageID 774). Additionally, as counsel was operating under an alleged conflict, Odom claims he was "in essence . . . unrepresented at all the bench conferences" (Id. at PageID 775-76).

Finally, "[a]pparently, Odom requested to conduct voir dire pro se" and this was denied by the trial court (DN 29 PageID 773). Odom claims that "[r]egardless of any showing of prejudice, Odom had a right to conduct voir dire pro se" (Id. at PageID 774).

For the last argument, Defendant presents a similar response to the prior ineffective assistance of counsel claims by stating that the Kentucky Court of Appeals reasonably found that Odom failed to meet the prejudice requirement under the <u>Strickland</u> analysis (DN 18 PageID 130). Utilizing the rationale of the Court of Appeals, Defendant states that the Court reasonably found that "Odom did not establish what questions counsel allegedly did not ask during voir dire, did not rebut the presumption of trial strategy concerning what questions were asked, and did not prove prejudice" (<u>Id.</u> at PageID 131). Therefore, Odom does not meet the requirements of showing that the Court of Appeals' determination was contrary to, or an unreasonable application of, clearly established law (<u>Id.</u> at PageID 131-32).

## Cumulative Error

In his reply memorandum, Odom attempted to lay the groundwork for a "cumulative error" section of his argument by mentioning two grounds that would be further discussed in that section: Grounds Two (photo allegedly mischaracterizing victim) and Four (Most Wanted posters) (DN 29 PageID 716-17, 719). However, neither of Odom's filings present any semblance of a "cumulative error" argument (*see* DN 1, 29). The end of Odom's reply contains the following footnote: "Odom chooses not to list sixty-seven (67) cumulative errors that occur[r]ed during trial. But, see attachment 'O' for a few" (DN 29 PageID 777). This attachment contains three events: 1) the Assistant Commonwealth's Attorney purportedly told the venire that Odom was a convicted felon; 2) Odom was denied "P.S.I." as a result of the trial judge allegedly sending the Parole Board a letter, similar to the one attached to Odom's filing (*see* DN 29-16 PageID 853), which recommended Odom not be granted parole; and 3) the trial court allegedly telling the jury that the judge would not mess with a guy with a gun (<u>Id.</u> at PageID 853-54).

It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). Additionally, the Sixth Circuit has held that, post-AEDPA, a cumulative error claim is not cognizable. Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005) ("[P]ost-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *see also* Hoffner v. Bradshaw, 622 F.3d 487, 513 (6th Cir. 2010); Sheppard v. Bagley, 657 F.3d 338, 348 (6th Cir. 2011); Marshall v. Haas, No. 17-1074, 2017 U.S. App. LEXIS 13775, at *13 (6th Cir. July 10, 2017); Edwards v. Smith, No. 1:16-CV-00005-GNS-HBB, 2016 U.S. Dist. LEXIS 156305, at *25 (W.D. Ky. Sept. 14, 2016), *adopted by* 2016 U.S. Dist. LEXIS 155991 (W.D. Ky. Nov. 9, 2016). Therefore, the undersigned concludes that there is no merit to the cumulative error claim in this habeas proceeding.

## CONCLUSIONS OF LAW

*Pro se* complaints are held to less stringent standards than those drafted by an attorney. Allegations, though inartfully pleaded by a *pro se* petitioner are sufficient to call for an opportunity to offer supporting evidence, unless it is "beyond doubt" that the petitioner could prove no set of facts that entitle him to relief. Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, 439 U.S. 970 (1978). Dismissal may be appropriate where a complaint contains a detailed description of the underlying facts which fail to state a viable claim. Estelle v. Gamble, 429 U.S. 97, 106-09 (1976).

Standard of Review

Because Odom filed his petition for writ of habeas corpus on March 24, 2020, review of the State court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") (DN 1). <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997). Under AEDPA, as to each claim asserted by Odom, the Court must first determine whether a federal Constitutional right has been violated. <u>Williams v. Taylor</u>, 529 U.S. 362, 367 (2000). If the answer is in the affirmative and the State court adjudicated the federal Constitutional claim on its merits, then this Court must employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition. <u>Williams</u>, 529 U.S. at 367, 402-403, 412-413.

As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

The phrase "contrary to" means "diametrically different," "opposite in character or nature," or "mutually opposed." <u>Williams</u>, 529 U.S. at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the writ if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court

24

on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-413.

Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the writ if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id. at 407-408, 413. When the Court makes the "unreasonable application" inquiry, it "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. Thus, the state court's application of clearly established federal law must be more than simply erroneous or incorrect, it must be objectively unreasonable. Id. at 409-411; Macias v. Makowski, 291 F.3d 447, 451 (6th Cir. 2002).

Under § 2254(d)(2), the petitioner may obtain relief only by showing the State court's conclusion is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Thus, § 2254(d)(2) applies when a petitioner challenges factual determinations by the State court. *See e.g.* Mitzel v. Tate, 267 F.3d 524, 537 (6th Cir. 2001) (challenge to state court's determination that the evidence did not support an aiding and abetting suicide instruction); Clark v. O'Dea, 257 F.3d 498, 506 (6th Cir. 2001) (challenge to state court's factual determination that Sheriff Greer had not seen the letter prior to Clark's trial); Stallings v. Bagley, 561 F.Supp.2d 821, 880-881 (N.D. Ohio 2008) (challenge to state court's factual finding regarding issue of mental retardation).

When the Court addresses a § 2254(d)(2) claim, it must presume that the state court's factual findings are sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C.

§ 2254(e)(1)).  Although this standard is demanding, it is not insatiable, and this "[d]eference does not by definition preclude relief."  <u>Dretke</u>, 545 U.S. at 240 (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003)).  In sum, with respect to § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding …."  <u>Dretke</u>, 537 U.S. at 340.

Timeliness

While neither party has contested the timeliness of Odom's petition, the undersigned must still determine whether Odom's petition is timely.  As mentioned above, Odom's petition is governed by AEDPA, which contains a one-year statute of limitations on petitions.  28 U.S.C. § 2244(d)(1).  Since Odom pursued a direct appeal the one-year period of limitation began to run on the date his judgment became final by the conclusion of direct review.  <u>Id.</u> § 2244(d)(1)(A) ("The limitation period shall run . . . [t]he date on which the judgment became final by the conclusion of direct review.").

If the state prisoner exhausts the direct appeal process in the state courts and timely files a petition for writ of certiorari, conclusion of direct appeal under § 2244(d)(1)(A) occurs when the Supreme Court of the United States denies the petition for writ of certiorari or affirms the state conviction.  <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 119-21 (2009); *see* <u>Holland v. Florida</u>, 560 U.S. 631, 635 (2010) (direct review of Holland's conviction concluded on the date the Supreme Court denied his petition for writ of certiorari).  If the state prisoner exhausts the direct appeal process in the state courts but does not to file a petition for writ of certiorari, conclusion of direct

appeal under § 2244(d)(1)(A) occurs when the time for filing the petition for writ of certiorari with the Supreme Court of the United States expires. Jimenez, 555 U.S. at 119-21; Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000) (one-year period of limitation in § 2244(d)(1)(A) does not begin to run until the time expires for filing a petition for writ of certiorari).

"In state criminal cases, such as this one, the time to file a petition for writ of certiorari is 'prescribed by the rules of the Supreme Court.'" Giles v. Beckstrom, 826 F.3d 321, 323-25 (6th Cir. 2016) (quoting 28 U.S.C. § 2101(d)). Rule 13.1 of the Rules of the Supreme Court of the United States indicates that a petition for writ of certiorari to review a State court judgment "is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." Rule 13.3 directs that "[t]he time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." The Sixth Circuit has held that "the date of the entry of the judgment or order" in Supreme Court Rule 13.3 refers to the date on which the Kentucky Supreme Court issued its opinion and order affirming a defendant's conviction, not 21 days later when the opinion becomes "final" under Ky. R. Civ. P. 76.30(2)(a). Giles v. Beckstrom, 826 F.3d 321, 323-25 (6th Cir. 2016).

There is a tolling provision that applies to AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d)(2). It reads as follows:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d)(2).

Since the Rule 11.42 motion is a "properly filed application for state post-conviction relief," it tolled the one-year period of limitations in § 2244(d)(1).  Id. § 2244(d)(2); Cowherd v. Million, 380 F.3d 909, 912-914 (6th Cir. 2004).  The one-year period of limitations in § 2244(d)(1) remained tolled until the Kentucky Court of Appeal's opinion addressing the Rule 11.42 motion became final.  *See* KY. R. CIV. P. 76.30(2)(a).

Here, the judgment of conviction against Odom was filed on April 4, 2008 (DN 18-2 PageID 225-28).  Odom was sentenced to life imprisonment (Id. at PageID 228).  Odom appealed his conviction to the Kentucky Supreme Court as a matter of right.  Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *6-7 (Ky. Mar. 18, 2020); *see also* KY. CONST. § 115; Commonwealth v. Hess, No. 2019-SC-0130-DG, 2021 Ky. LEXIS 144, at *7-8 (Ky. June 17, 2021).  On March 18, 2010, the Kentucky Supreme Court affirmed all Odom's convictions except the two counts of intimidating a participant in the legal process, which were reversed.  Odom, 2010 Ky. Unpub. LEXIS at *41.  Therefore, although Odom did not pursue review by the United States Supreme Court, his ability to file a petition for writ of certiorari was available for 90 days following March 18, 2010.  Thus, the one-year statute of limitations began to run on June 17, 2010.

Odom's next filing was his motion to vacate pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42, which was filed on January 31, 2011 (DN 18-2 PageID 229-296).  Thus, the statute of limitations was tolled starting January 31, 2011.  This means Odom tolled the statute of limitations after 228 days.  Subsequently, Odom filed a motion to vacate his judgment pursuant

to RCr 60.02 on March 22, 2013 (Id. at PageID 346-350).  Odom also filed, *pro se*,[5] an "amending supplement" to his RCr 11.42 and 60.02 motions (Id. at PageID 363-401).  On April 5, 2016, the trial court issued an opinion and order denying both motions (Id. at PageID 416-23).  Ultimately, this order was appealed to the Kentucky Court of Appeals.  Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *7 (Ky. Ct. App. Jan. 3, 2020).  The Court of Appeals issued their opinion on January 3, 2020, which affirmed the findings of the trial court.  Id. at *1, 32.  Discretionary review by the Kentucky Supreme Court was denied as Odom's "motion for discretionary review was not filed on or before JUNE 15, 2020" (DN 18-4 PageID 629).

As the Court of Appeals was the last court to consider the merits of the claim, the statute of limitations was no longer tolled after their opinion was issued.  Thus, the clock began again on January 4, 2020.  *See* Vorman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision in § 2244(d) does not resuscitate 'the limitations period (*i.e.*, restart the clock at zero); it can only pause a clock that has not yet fully run.'").  Odom filed the present petition on March 24, 2020 (DN 1), which adds 80 more days to the running of the statute of limitation.

Therefore, when Odom filed his petition on March 24, 2020, he filed 307 days into the one-year statute of limitation, making his petition timely.

---

5    After Odom filed his RCr 60.02 motion, the trial court ordered a preliminary hearing to "discuss the possibility of narrowing the scope of Mr. Odom's motions" and appointed the Department of Public Advocacy to represent Odom (DN 18-2 PageID 356).  However, prior to the hearing, the Department moved the trial court to be removed from the case as Odom retained private counsel, and that motion was granted (Id. at PageID 357-59).  This relationship with private counsel was short-lived, as Odom subsequently moved for an order to withdraw private counsel (Id. at PageID 360-62), and counsel filed her own motion to withdraw (Id. at PageID 402).  These motions were granted (Id. at PageID 404).

<u>DISCUSSION</u>

Claims One, Two, and Four

At the forefront, the undersigned will consider claims one, two, and four.  In all of these claims, Odom has waived the substantive argument.  To claim one, Odom conceded that "the [Kentucky] Supreme Court was . . . reasonable denying [the] claim" (DN 29 PageID 715-16); for claim two, Odom also concedes that the state courts' actions did not violate clearly established law (<u>Id.</u> at PageID 717); and in claim four, Odom again states that the issue was not contrary to clearly established law (<u>Id.</u> at PageID 719).  While Odom may have wanted to present the claims as "cumulative error," as least to claims two and four, the undersigned has already noted that the Sixth Circuit has held that, post-AEDPA, a cumulative error claim is not cognizable.  <u>Moore v. Parker</u>, 425 F.3d 250, 256 (6th Cir. 2005).  As such, claims one, two, and four have been waived.

Claim Three

Turning to the third claim of error, Odom cites to the seminal case of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  The trial court denied Odom's claim after reviewing the three-part analysis from <u>Commonwealth v. Snodgrass</u>, 831 S.W.2d 176 (Ky. 1992).  <u>Odom v. Commonwealth</u>, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *21-22 (Ky. Mar. 18, 2010).  This analysis included finding that Odom "had made a prima facie showing that the Commonwealth had exercised a peremptory challenge on the basis of race," the Commonwealth articulated a race-neutral explanation for the strikes, and Odom "had not carried the burden of proving purposeful discrimination."  <u>Id.</u>  Further, the trial court concluded that "the Commonwealth's race-neutral reasons for striking the jurors were 'legitimate from a tactical standpoint, and consistent with the arguments that [the prosecutor] has made.'"  <u>Id.</u> at *22 (alteration in original).  The Kentucky

Supreme Court affirmed this determination by noting that "[t]he Commonwealth struck two African-American jurors for inattentiveness, one of whom the Commonwealth had previously brought to the attention of the trial court[, and] . . . these two jurors were struck along with, and for the same reason as, a white juror." Id. at *23. As for the third African-American juror, the Kentucky Supreme Court found it "reasonable to conclude that the Commonwealth struck [him] . . . because he had acquitted a defendant the previous week." Id.

"A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government." Duncan v. Louisiana, 391 U.S. 145, 155 (1968). "For a jury to perform its intended function as a check on official power, it must be a body drawn from the community." Batson v. Kentucky, 476 U.S. 79, 86 n.8 (1986) (citing Duncan, 391 U.S. at 156; Glasser v. United States, 315 U.S. 60, 86-88 (1942)). "By compromising the representative quality of the jury, discriminatory selection procedures make 'juries ready weapons for officials to oppress those accused individuals who by chance are numbered among unpopular or inarticulate minorities.'" Id. (quoting Akins v. Texas, 325 U.S. 398, 408 (1945) (Murphy, J., dissenting)). "Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." Id. at 87. The protection against racial discrimination when selecting the venire has been engrained in our jurisprudence for more than a century. Strauder v. West Virginia, 100 U.S. 303, 312 (1880), *abrogated on other grounds by* Taylor v. Louisiana, 419 U.S. 522 (1975) (Petitioner "was entitled to immunity from discrimination against him in the selection of jurors, because of their color . . ."); *see also* Ex parte Commonwealth of Virginia, 100 U.S. 339 (1879).

"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89 (internal citation omitted). The United States Supreme Court has previously stated what is necessary to demonstrate a Batson violation:

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, *supra*, at 494, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, 345 U.S., at 562. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely

illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See *McCray v. Abrams*, 750 F.2d, at 1132; *Booker v. Jabe*, 775 F.2d 762, 773 (CA6 1985), cert. pending, No. 85-1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption -- or his intuitive judgment -- that they would be partial to the defendant because of their shared race. Cf. *Norris v. Alabama*, 294 U.S., at 598-599; see *Thompson v. United States*, 469 U.S. 1024, 1026 (1984) (BRENNAN, J., dissenting from denial of certiorari). . . . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

Id. at 96-98 (footnotes omitted); *see also* Woods v. Cook, 960 F.3d 295, 302 (6thCir. 2020) ("When a defendant objects to a prosecutor's use of a peremptory strike, Batson requires courts to follow three steps. Step One: The defendant must make out a prima facie case 'giv[ing] rise to an inference of discriminatory purposes' in the peremptory strike. Step Two: The burden shifts to the State to 'explain adequately the racial exclusion' by offering permissible, race-neutral reasons for the strike. Step Three: The court must examine the justification and determine whether discrimination occurred.") (internal citations omitted).

In the present case, the Commonwealth utilized five of its nine potential peremptory challenges, and three of those five challenges were against African-American jurors. Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *21-22 (Ky. Mar. 18, 2010). Odom objected to these challenges under Batson and established a prima facie showing. Id. at *21. When asked for a reason, the Commonwealth stated that two of the African-American jurors were inattentive or sleeping, as the Commonwealth had attempted to strike them for cause based upon the same reasoning. Id. Tandem to those jurors, the Commonwealth also moved to strike for cause, and then used a peremptory challenge, against a white juror for the same reason. Id. As for the third African-American juror, "the Commonwealth stated that the juror had served on a jury that had acquitted a defendant the previous week." Id. at *21-22.

At this stage, the trial court had conducted the first two stages of the Batson procedure exactly as Batson opined, which comports with applicable law. The fact that the trial court followed, and the Kentucky Supreme Court affirmed, the Batson procedure utilized exemplifies that the first two steps by the trial court were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Turning to the last leg of the Batson analysis, the trial court was tasked with weighing the totality of the circumstances and the proffered reasoning to determine whether "purposeful discrimination" occurred. The trial court stated that striking the jurors were "legitimate from a tactical standpoint, and consistent with the arguments that [the prosecutor] has made." Id. at *22. The Kentucky Supreme Court found "that the Commonwealth's proffered reasons were legitimate[,]" as the Commonwealth had previously brought one of the jurors to the attention of the court, and the Commonwealth had also struck a white juror for the same reason. Id. at *23.

The Supreme Court also found it to be "reasonable to conclude that the Commonwealth struck the third African-American juror because he had acquitted a defendant the previous week." Id.

When reviewing the facts present, the prosecution struck three jurors for inattentiveness and sleeping, including one of whom the Commonwealth had previously brought to the trial court's attention. While Odom may assert that no other party noticed the jurors having a "subdued demeanor," (DN 29 PageID 718), "deference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." Snyder v. Louisiana, 552 U.S. 472, 479 (2008). The Supreme Court found that "these determinations of credibility and demeanor lie 'peculiarly within a trial judge's province,' and . . . 'in the absence of exceptional circumstances, we would defer to [the trial court]." Id. at 477 (internal citation omitted, alteration in original). There is no "exceptional circumstance" that would strip deference from the trial court. Further, it is entirely reasonable for the prosecution to strike jurors for being inattentive and for being on a jury who acquitted another defendant.

Therefore, the trial court and Kentucky Supreme Court followed all three steps of the Batson analysis. Thus, the Kentucky Supreme Court's affirmation of the trial court's determination was not objectively unreasonable, nor was the decision contrary to clearly established Supreme Court precedent.

Claim Five

Turning to the purported error regarding the use of the escape charge, Odom alleges a due process violation (DN 1 PageID 6-7). The trial court denied Odom's motion for a mistrial after the prosecution's case-in-chief "failed to produce any evidence of [Odom]'s escape since his arrest[,]" when the Commonwealth's opening argument proposed that this information would be

presented during the trial.  <u>Odom v. Commonwealth</u>, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *26 (Ky. Mar. 18, 2010).  This decision allowed the Commonwealth, during cross-examination of Odom, to elicit testimony that Odom "picked up escape charges" since his arrest. <u>Id.</u>  Ultimately, after review of Kentucky Rules of Evidence 401, 403, and 404, the Kentucky Supreme Court found, "While [Odom]'s escape charges are prejudicial, they are not unduly prejudicial."  <u>Id.</u> at *31.

"Cases in [the United States Supreme Court's precedent] have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.  . . .  But it has never been thought that such cases establish [the Supreme Court] as a rule-making organ for the promulgation of state rules of criminal procedure."  <u>Spencer v. Texas</u>, 385 U.S. 554, 563-64 (1967).  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."  <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990).  "[Judges] are to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency."  <u>Id.</u> at 353 (quoting <u>United States v. Lovasco</u>, 431 U.S. 783, 790 (1977)) (internal citations omitted).

Even then, the Supreme Court in <u>Estelle</u> "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  . . . [A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975) (<i>per curium</i>)).  "[F]ederal habeas corpus relief does not lie for errors of state law."  <u>Id.</u> at 67 (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)); <i>see</i>

*also* Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994) ("Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation. . . . We must evaluate whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'").  However, when considering evidentiary claims, a due process violation may emerge when the ruling is "so egregious that it results in a denial of fundamental fairness."  Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).

The Court in Spencer noted the complexity and variety of rules of evidence concerning prior offenses across various jurisdictions, but the Court broadly characterized the use of the evidence:

> Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive, a system of criminal activity, or when the defendant has raised the issue of his character, or when the defendant has testified and the State seeks to impeach his credibility[.]

Spencer v. Texas, 385 U.S. 554, 561 (1967) (internal citations omitted).

A conundrum presented to the undersigned is that the standard under AEDPA requires the undersigned and the district judge to consider whether the admission of the prior bad acts evidence was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).  The conundrum arises as the Sixth Circuit found "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  Bugh, 329 F.3d at 512.  The Sixth Circuit recounted some of the cases the undersigned has cited above, but the Sixth Circuit also

noted, "While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." Id. at 513 (citing Old Chief v. United States, 519 U.S. 172 (1997); Huddleston v. United States, 485 U.S. 681 (1988)).

The claim Odom presents appears to be an evidentiary argument under state law, which would not be appropriate for the federal courts to consider. Even if Odom sufficiently asserted his federal constitutional rights to support this claim, there is no Supreme Court precedent for the state courts to apply unreasonably or act contrary to. Moreover, Odom has not demonstrated that the state courts' determination was so egregious that it violated fundamental fairness. In sum, Odom should be awarded no relief under this claim.

Claim Six

Related to the prior claim, the sixth claim of error is related to the introduction of "other acts" evidence. The difference between the previous claim and this claim turns on the mentioning of a robbery conviction in Indiana. The Kentucky Supreme Court even noted issues with the mention of this charge:

> The mention of Appellant's arrest and conviction for robbery, however, presents more difficult questions. The fact that Appellant was arrested, tried for, and convicted of robbery is not evidence of flight. It is not probative of an expression of a sense of guilt in the instant case, but is instead other bad act evidence, which should have been excluded under KRE 404(b). Nor is it relevant under KRE 401.

Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *32 (Ky. Mar. 18, 2010). The Court even went further to state that "the mention of [Odom]'s robbery

conviction was error . . ." Id.  While this may be the case, the Court also noted mitigating factors making the error harmless, such as the trial court's admonition to the jury, the "great deal of other evidence" presented by the Commonwealth, and Odom's "own admission of guilt regarding the charge of criminal mischief." Id. at *32-33.

As this claim is an allegation of a due process violation, like claim five, the same precedent—or lack thereof—is still applicable here.  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).  The Sixth Circuit also noted, "While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." Id. at 513 (citing Old Chief v. United States, 519 U.S. 172 (1997); Huddleston v. United States, 485 U.S. 681 (1988)).

The claim Odom presents appears to be an evidentiary argument under state law, which would not be appropriate for the federal courts to consider. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. . . . [A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Even if Odom sufficiently asserted his federal constitutional rights to support this claim, there is no Supreme Court precedent for the state courts to apply unreasonably or act contrary to. Bugh, 329 F.3d at 512.  Moreover, Odom has not demonstrated sufficient evidence that the state courts' determination was so egregious that it violated fundamental fairness. See id.  In sum, Odom should be awarded no relief under this claim.

However, even if Odom's claim was to be considered a due process violation, he should still be awarded no relief under this claim. The Supreme Court of the United States has held "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in [Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in [Chapman v. California, 386 U.S. 18, 24 (1967)]." Fry v. Pliler, 551 U.S. 112, 121-22 (2007). Further, the Supreme Court of the United States has concluded that post-Brecht developments (namely, the passage of the AEDPA) did not undermine Brecht, and that standard continues to apply today. Fry, 551 U.S. at 119-120.

In the Sixth Circuit, Brecht is always the test in § 2254 proceedings, and there is no reason to ask whether the state court "unreasonably" applied Chapman under the AEDPA and, further, whether the constitutional error had a "substantial and injurious" effect on the jury's verdict. Ruelas v. Wolfenbarger, 580 F.3d 403, 412 (6th Cir. 2009) (citing Hall v. Vasbinder, 563 F.3d 222, 236 (6th Cir.2009); Fleming v. Metrish, 556 F.3d 520, 537 (6th Cir.2009)). In coming to this conclusion, the Sixth Circuit took guidance from a passage in Fry stating, "it certainly makes no sense to require formal application of both tests (AEDPA/*Chapman* and *Brecht*) when the latter obviously subsumes the former." Ruelas, 580 F.3d at 412 (quoting Fry, 551 U.S. at 127). "In other words, the determination of whether an error had a 'substantially injurious' effect on the jury's verdict is broader and thus 'subsumes' the question whether the state court reasonably applied *Chapman*." Ruelas, 580 F.3d at 412. The Sixth Circuit has concluded, "*Fry* held that *Brecht* applies to all cases on collateral review, and a federal habeas court is never required to

determine whether a state court's harmless error determination was 'unreasonable' — *Brecht* handles the work on this, too." Ruelas, 580 F.3d at 412.

In light of the above case law, the Brecht standard is the clearly established Supreme Court precedent applicable to the circumstances. The undersigned will now assess whether the Supreme Court of Kentucky's assessment of Odom's alleged constitutional error was contrary to, or an unreasonable application of, Brecht. The assessment focuses on whether, in light of the record as a whole, the prejudicial impact "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 638. Notably, if the evidence is balanced so evenly that the undersigned is in grave doubt about whether the error meets this standard, then the undersigned must hold that the error is not harmless. O'Neal v. McAninch, 513 U.S. 432, 436-37 (1995).

Notably, the Supreme Court of Kentucky did not explicitly consider the evidence under the Brecht standard. Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *31-33 (Ky. Mar. 18, 2010). Instead, the Court utilized a harmless error review, in light of the limited purpose admonition to the jury and the "great deal of other evidence of Appellant's guilt." Id. at *32-33. As previously noted, the United States Supreme Court has acknowledged situations when the state appellate courts may not directly cite to Brecht or Chapman on review, and the Court asserted that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set for in *Brecht* . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*[.]" Fry v. Pliler, 551 U.S. 112, 121-22 (2007); *see also* Ozier v. Jackson, No. 16-cv-12879, 2017 U.S. Dist. LEXIS 86169, at *27 (E.D. Mich. June 6, 2017) ("Thus, Brecht's

more 'forgiving' substantial and injurious effect test for harmless error review applies on habeas review of a state-court conviction, regardless of whether the state courts engaged in a harmless error analysis of a petitioner's claims."), *aff'd* Ozier v. Harry, No. 17-1803, 2018 U.S. App. LEXIS 15967 (6th Cir. June 13, 2018).

In the present case, "[o]ver defense counsel's objection, the prosecution was allowed to elicit information that Mr. Odom was tried and convicted for robbery while in Indiana" (DN 18-4, Odom's Brief to the Kentucky Supreme Court, PageID 462). "The trial judge admonished the jury that it should not consider the Indiana felony and conviction in deciding if [Odom] was guilty other than evidence of flight from arrest for the Kentucky charges" (Id.). The introduction of this evidence presents serious evidentiary concerns for the reasons provided by the Kentucky Supreme Court. However, while Odom correctly claims that the admonition could not "unring the bell[,]" the prompt admonition from the trial court demanded an immediate restriction on the consideration of the evidence. Further, the Commonwealth presented numerous eyewitnesses regarding Odom's guilt, and Odom's own admissions of guilt were introduced.

When faced with weighing the impact of the Indiana conviction against the totality of the other evidence presented, the circumstances weigh towards the Indiana conviction's impact being harmless error. While disconcerting, the introduction of this information does not reach the threshold of "a substantial and injurious effect." Brecht, 507 U.S. at 638. Therefore, the Supreme Court of Kentucky's determination was not contrary to, or an unreasonable application of, the Brecht standard. For the reasons above, the undersigned concludes that Odom is not entitled to relief under this claim.

Claim Seven

Next, Odom argues that he was denied his right to a speedy trial under KRS 500.110[6] and the Sixth and Fourteenth Amendments (DN 1 PageID 7).  Odom disputes the purported waiver of this right and the denial of relief (DN 29 PageID 722).  The Kentucky Supreme Court did not find a speedy trial violation using the Barker factors that Odom has cited, even with a "presumptively prejudicial" length of delay, because "[a]ll delays can be attributed at least partially to [Odom] or his counsel except for two[.]"  Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *39 (Ky. Mar. 18, 2010).  Further, Odom "suffered very little prejudice from these delays." Id. at *40.

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court.  Lockyear v. Andrade, 538 U.S. 63, 70-71 (2003).  Here, the clearly established precedent is set forth in Doggett v. United States, 505 U.S. 647, 651 (1992), and Barker v. Wingo, 407 U.S. 514, 530 (1972).  The Sixth Amendment guarantees a defendant the right to a speedy trial which is assessed upon consideration of the length of the delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant.  Doggett, 505 U.S. at 651; Barker, 407 U.S. at 530.  Notably, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry

6  To the extent that Odom attempts to assert the speedy trial right under the KRS, this Court does not function as an additional state appellate court reviewing state-court decisions on state law or procedure.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law … binds a federal court sitting in habeas corpus"); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003) (citing Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988)).  Instead, this Court is obligated to accept as valid the Kentucky Court of Appeal's interpretation of State law.  Bradshaw, 546 U.S. at 76; Estelle, 502 U.S. at 68; Vroman, 346 F.3d at 604 (citing Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986)).  Therefore, the undersigned declines to consider any claim by Odom which asserts a speedy trial right pursuant to state statute.

43

into the other factors that go into the balance." <u>Barker</u>, 407 U.S. at 530. A one-year delay between accusation and the beginning of trial is generally considered "presumptively prejudicial." <u>Doggett</u>, 505 U.S. at 652 n.1. With regard to the fourth factor, there are "three defense interests a court should consider when determining actual prejudice in speedy trial cases: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; (3) the possibility that the defense will be impaired." <u>Maples v. Stegall</u>, 427 F.3d 1020, 1031 (6th Cir. 2005) (citing <u>Barker</u>, 407 U.S. at 532). The most serious of these three interests is the last. <u>Id.</u>

Here, as the Kentucky Supreme Court found, "[t]he length of the delay from Appellant arriving in Kentucky from Indiana to Appellant's trial was nearly two years[,]" which was and is sufficient to become "presumptively prejudicial." <u>Odom</u>, 2010 Ky. Unpub. LEXIS 30, at *39 (citing <u>Barker</u>, 407 U.S. at 530).

Turning to the next factor, the factual timeline of events, which Odom has not objected to or contradicted, shows that he was transferred from Indiana to Kentucky in January 2006, and his first trial was in April 2006. <u>Id.</u> at *33. Thereafter, Odom was given two months to retain private counsel after firing his appointed counsel, which was unsuccessful. <u>Id.</u> at *36. On June 20, 2006, Odom requested a continuance until late September, but the trial date was later scheduled for November 2006 (after appointed counsel was reinstated). <u>Id.</u> Late September 2006, the parties met and realized the trial was set for the Thanksgiving holiday. <u>Id.</u> at *36-37. The prosecution had matters already booked for the remainder of the year, and defense counsel was booked through the end of April 2007. <u>Id.</u> at *37. The new trial date was in early May 2007. <u>Id.</u> However, during the interim, Odom again asked for appointed counsel to be removed, which was granted, which required a continuance until mid-October 2007. <u>Id.</u> The prosecution asked for a one-week

continuance, but scheduling confusion soon arose, and the trial was rescheduled for December 12, 2007.  Id. at *37-38.  This means that from April 2006 to December 2007, the prosecution asked for continuances spanning three to four months.  Odom, on the other hand, individually sought about seven months of extension based solely on seeking new counsel.  Odom's reappointed counsel accounted for four months.  Thus, Odom, and his counsel to a lesser extent, were largely the actors which resulted in the majority of the delay.

Turning to the third factor, Odom had asserted his speedy trial right on June 19, 2007, when he filed a motion seeking a speedy trial (DN 18-2 PageID 140).  When compared against the timeline, this motion falls right into the middle of the continuance after Odom, for the second time, asked for his appointed counsel to be removed.  Even then, as the Kentucky Supreme Court shows in its opinion, Odom clearly waives his speedy trial rights and the deadlines enumerated in the Interstate Detainer Agreement:

> During the first trial, the following exchange occurred.

> The Court: Mr. Odom, I understand that you would like to talk to me about our going forward in the case today

> [Odom]: Yes sir.  I'm not satisfied with my representation. I would like to waive my rights and hire my own attorney.

> The Court: Okay.  When you say waive your rights, you're talking about the speedy right trial [sic] and the deadlines under the Interstate Detainer Agreement?

> [Odom]: Yes, sir.

Odom, 2010 Ky. Unpub. LEXIS 30, at *33-34.  In Odom's brief to the Kentucky Supreme Court, the colloquy continues different from the Supreme Court's recount.  Odom contended that the colloquy continued with:

> Judge: And when you talk about hiring your own attorney you are talking about private counsel hired with your own private funds?
>
> Odom: Yes sir.
>
> Judge: Okay.  Commonwealth's position?
>
> [Commonwealth Attorney]: No objection.
>
> Judge: I'll permit you to do that.

(DN 18-4 PageID 466).  When presented with a thirty-day timeline to obtain private counsel, Odom was uncertain whether that would be a sufficient time period, or whether releasing his appointed counsel was the proper choice, as he had not discussed the private counsel plan with his family.  Odom, 2010 Ky. Unpub. LEXIS 30, at *35.  The trial court began questioning Odom's appointed counsel after Odom stated that he was uncertain whether to officially release his appointed counsel.  Id. Odom's appointed counsel explained, "Odom has expressed himself now as being not sure whether he can hire private counsel.  I mean, it sounds like his attitude about his representation by us hasn't changed.  It's simply his ambiguity about whether he will have the ability to hire a private attorney that's forcing him to continue on with the trial even though he has expressed his dissatisfaction about present counsel and his desire to have other counsel."  While Odom may claim that he did not waive his rights, Odom clearly initiated the discussion regarding

his representation and unilaterally proffered the decision to waive his rights.  After speaking with the trial court, and the court seeking the Commonwealth's position, Odom's waiver was permitted.

Looking to the prejudice prong, Odom has not claimed he suffered prejudice because his pretrial incarceration was oppressive or that he suffered enhanced levels of anxiety and concern. Instead, Odom argues that his defense was impaired because Amy Mott was available at the first trial, but unavailable at the second, which impaired his ability to defend against the assault charge. The Kentucky Supreme Court stated, "Further, there is no indication that Appellant's defense was impaired by the delay.  In fact, several continuances were granted to give defense counsel more time to prepare."  Id. at *40-41.  As for Odom's argument regarding Mott's absence, Odom had not presented the Court with the argument (*see* DN 18-4 PageID 471).  Even then, Yolanda Cooper testified, as an eyewitness, about the assault on Amy Mott, and Odom was able to cross-examine Ms. Cooper.  Therefore, his defense was not prejudiced by the delay.

Moreover, Odom was not prejudiced by his prolonged pretrial incarceration as Odom was already incarcerated in Indiana.  Id. at *40.  "Had Appellant been tried quickly and acquitted, he would have been returned to custody in Indiana."  Id.

Therefore, while Odom's delay is considered "presumptively prejudicial," the remaining three factors weigh heavily against Odom, just as the Kentucky Supreme Court found.  Thus, the Kentucky Supreme Court's determination regarding the denial of relief as to the right to a speedy trial was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  For the above reasons, the undersigned concludes that Odom is not entitled to habeas relief on this claim.

Claim Eight

Eighth, Odom contends that he was denied his right to confrontation when Amy Mott's prior testimony was presented, but Ms. Mott was not present for cross-examination (DN 1 PageID 7). Alternatively, Odom asserts that the trial court should have directed a verdict of acquittal on the assault charge because of this purported error (DN 29 PageID 724). A footnote in Odom's reply brief asserts, "This issue was initially raised jointly with two (2) counts of intimidating a participant in the legal process. Since the intimidation charges were reversed on direct appeal[,] they will not be addressed" (Id. at PageID 724 n.2).

The Kentucky Supreme Court agreed with Odom on the intimidation charge but disagreed regarding the assault charge. Odom, 2010 Ky. Unpub. LEXIS 30, at *13-14. The Court found that the convictions for intimidating a participant in the legal process must be reversed because the admission of the intimidation statements was a violation of Crawford v. Washington, 541 U.S. 36 (2004). The assault charge, however, was affirmed after the Court found it was not "clearly unreasonable" for the jury to find Odom guilty and that the issue of Yolanda Cooper's credibility was properly reserved for the jury's determination. Odom, 2010 Ky. Unpub. LEXIS 30, at *13-14.

Thus, at the initial stage, the Commonwealth is correct that Odom received the relief he sought (DN 18 PageID 129-30), but that relief was only for the intimidation charges. The undersigned will now turn to the assault charge, and whether the denial of a directed verdict of acquittal comported with clearly established law.

At issue here is the clearly established precedent set forth in Jackson v. Virginia, 443 U.S. 307 (1979). The analysis of the Supreme Court of Kentucky did not squarely address the federal Constitutional issue in question because it applied the standard in Commonwealth v. Benham, 816

48

S.W.2d 186, 187 (Ky. 1991).  <u>Odom</u>, 2010 Ky. Unpub. LEXIS 30, at \*13-14.  However, the undersigned will review this claim under § 2254(d)(1) because the analysis in <u>Benham</u> does bear some similarity to the requisite Constitutional analysis.  <u>Dyer v. Bowlen</u>, 465 F.3d 280, 284 (6th Cir. 2006); <u>Filiaggi v. Bagley</u>, 445 F.3d 851, 854 (6th Cir. 2006); *see also* <u>Bowen v. Haney</u>, 622 F.Supp.2d 516, 547 (W.D. Ky. 2008) (a § 2254(d)(1) review conducted because the <u>Benham</u> standard applied by the Supreme Court of Kentucky was found to be similar to the <u>Jackson</u> standard); <u>Longwell v. Arnold</u>, 559 F.Supp.2d 759, 767-768 (E.D. Ky. 2008)(same).  More specifically, the undersigned will determine whether the decision of the Supreme Court of Kentucky is contrary to or an unreasonable application of the clearly established precedent set forth in <u>Jackson</u>.  28 U.S.C. § 2254(d)(1).

If, after reviewing the totality of the evidence, a judge can conclude that reasonable minds could find guilt beyond a reasonable doubt, then a motion for a directed verdict of acquittal should be denied, and the case should be presented to the jury.  <u>Jackson</u>, 443 U.S. at 324; <u>Trowell v. Commonwealth</u>, 550 S.W.2d 530 (1977).  After carefully reviewing the evidence, the undersigned concludes that reasonable minds could have found guilt beyond a reasonable doubt.  Yolanda Cooper testified that Odom struck Amy Mott twice with a gun, and the Commonwealth introduced photos which depicted injuries which corroborated Cooper's testimony.  <u>Odom</u>, 2010 Ky. Unpub. LEXIS 30, at \*13.  While Odom is adamant that Cooper's testimony was unreliable or self-serving, these contentions were presented to the jury for their credibility determination of Cooper's testimony.

Therefore, the Kentucky Supreme Court's determination was not contrary to, or an unreasonable application of, clearly established law. As such, Odom is not entitled to relief, as to the assault charge, under this claim.

Claim Nine

Turning to the first issue considered by the Kentucky Court of Appeals, Odom claims that his trial counsel was ineffective due to an alleged conflict of interest (DN 1 PageID 7-8). This purported conflict stems from trial counsel's wife being employed by the public defender's office during the period in which Odom was represented by the public defender's office (DN 29 PageID 731). The Kentucky Court of Appeals found no conflict in trial counsel's representation as the hybrid representation agreement created a limited waiver of counsel, Odom testified in a narrative fashion, and Odom's comments during a hearing for trial counsel's motion to withdraw— "I don't have no conflict with him"—acted as a knowing and voluntary waiver of conflicts of interest. Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *12-13 (Ky. Ct. App. Jan. 3, 2020). Additionally, the Court of Appeals stated, "The fact that counsel's wife worked at the public defender's appellate division automatically imputes a conflict to neither her nor counsel." Id. at *15. The Court also noted the predicament placed upon the trial court, as it had to weigh the possibility of a potential conflict of interest against the effects of postponing the impending trial date to obtain new counsel, while simultaneously mentioning the unlikeliness of Odom's ability to obtain new counsel "given the lack of personal funds for Odom to hire private counsel and the previous conflicts with all court-appointed counsel[.]" Id. at *17-18.

"Inherent in the Sixth Amendment right to counsel is the right to reasonably competent counsel and the right to counsel's undivided loyalty." United States v. Hall, 200 F.3d 962, 966

(6th Cir. 2000). The court's duty when reviewing claims of potential conflicts of interest "is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations . . . to assure vindication of the defendant's Sixth Amendment right to counsel." Mickens v. Taylor, 535 U.S. 162, 176 (2002) (citing Nix v. Whiteside, 475 U.S. 157, 165 (1986) ("Breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel")). "[A] conflict of interest alone is not sufficient to justify reversal of a conviction." Hall, 200 F.3d at 966.

A defendant who shows an actual conflict of interest which "affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980) (citing Holloway v. Arkansas, 435 U.S. 475, 487-91 (1978)). This court will not "find an actual conflict unless appellants can point to 'specific instances in the record to suggest an actual conflict or impairment of their interests.'" Thomas v. Foltz, 818 F.2d 476, 481 (6th Cir. 1987) (quoting United States v. Mers, 701 F.2d 1321, 1328 (11th Cir. 1983)). If an actual conflict of interest is identified, in which counsel actively represents against a defendant's interests, then prejudice is presumed. "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Cuyler, 446 U.S. at 350. These specific instances must show that "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." Strickland v. Washington, 466 U.S. 668, 692 (1984).

Additionally, if a defendant is unable to show active representation by counsel against their interests, "[i]t is not enough [to demonstrate prejudice] for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Instead, they "must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Here, there are no allegations presented that trial counsel actively represented against Odom's interests, nor has Odom argued as such. Moreover, Odom even concedes, "Petitioner never said 'counsel working against [me]" (DN 29 PageID 730) (alteration in original). Thus, prejudice is not presumed in this matter. As for the purported conflict, the Kentucky Court of Appeals, drawing from a pretrial conference, found that "Odom's trial counsel disclosed to Odom that his wife had been employed at the appellate division of the public defender's office during the time Odom was represented by the public defender's office." Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *11 (Ky. Ct. App. Jan. 3, 2020).

The Kentucky Rules of Professional Conduct, specifically Rule 1.7, requires that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." KY. SUP. CT. R. 3.130, KY. R. PROF. CONDUCT, 1.7(a). "A concurrent conflict of interest exists if:

1. the representation of one client will be directly adverse to another client; or

2. there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Id. Looking to the two instances, neither is applicable. As for imputing a conflict of interest, Rule 1.10 states:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

KY. SUP. CT. R. 3.130, KY. R. PROF. CONDUCT, 1.10(a). Looking to this section, it is not applicable either. Simply put, the mere fact that Odom was represented by appointed outside counsel, after the public defender's office had been conflicted, who was married to a public defender, who operated in an entirely different department, on entirely unrelated matters, does not impute a conflict upon Odom's counsel. *See* Samuels v. Commonwealth, 512 S.W.3d 709, 716 (Ky. 2017) ("There was no evidence that [the attorneys] collaborated or were otherwise involved in each other's cases during the period of overlapping representation. Nor was there any evidence that the two accessed, or had access to, the confidential client communications and information of the other. . . . This, without more, is insufficient to show a conflict of interest in violation of the Sixth Amendment."). Even though trial counsel feared the possibility of a conflict, as all attorneys are charged with being cognizant of, this does not concoct a conflict out of thin air. Thus, no conflict of interest actually existed. As no conflict of interest existed, Odom has not demonstrated that his trial counsel acted with deficient performance.

With the first required prong being nonexistent, the undersigned declines to consider whether Odom was prejudiced. As such, the state court's determinations are not contrary to, or an unreasonable application of, clearly established law. Odom is not entitled to relief under this claim.

Claim Ten

As previously alluded to, Odom's tenth claim contains the most immense one in his petition: Odom asserts that his trial counsel conceded guilt to the charges of murder, second degree assault, and two counts of criminal mischief (DN 1 PageID 8; DN 29 PageID 735). Odom also requests an evidentiary hearing on this claim because the video "record apparently appears to skip" and during this skip, Odom argues that his counsel stated, "Mr. Butler mentioned murder, assault 2nd, criminal mischief, and intimidating a witness in the legal process. Mr. Odom denies that charge" (DN 29 PageID 735) (emphasis omitted). It is Odom's contention that "it is reasonable to conclude that the jury heard counsel say, 'my client is guilty of murder, assault second, and two counts of criminal mischief, but not the two counts of intimidating a witness" (Id. at PageID 736). Even though counsel clarified that Odom denied all charges, after Odom's objection to the first statement, Odom claims "the jury ha[d] been tainted endlessly" (Id. at PageID 739).

Defendant, in contrast, simply relies upon the findings of the Kentucky Court of Appeal, which found that counsel did not concede guilt (DN 18 PageID 130). Moreover, Defendant also claims that Odom does not show that the state courts' determination was contrary to, or an unreasonable application of, clearly established law (Id. at PageID 130-32).

When considering the claim, the Kentucky Court of Appeals was presented a similar quote by Odom, but instead of "Mr. Odom denies that charge[,]" Odom argued counsel said, "He [Odom] denies the intimidating a witness." Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *18-19 (Ky. Ct. App. Jan. 3, 2020). Regardless, the Court refuted Odom's claim by directly quoting the record, where counsel stated "Mr. Butler mentioned intimidating witness in legal process. Mr. Odom denies that charge." Id. "This was said as part

54

of counsel's speech to the venire concerning the importance of Odom's fundamental and constitutional rights to trial by jury and to examine witnesses." Id. at *19. Moreover, the Court found that "any error was harmless and not prejudicial" as counsel clarified that Odom was not conceding guilty to any other counts. Id.

Here, the clearly established precedent is set forth in Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); Strickland, 466 U.S. at 687. The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In making this assessment, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, the Court must determine whether, in light of all the circumstances, counsel's challenged conduct falls outside the wide range of professionally competent assistance. Id. In doing so, the Court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id. Additionally, the Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. As a result of this presumption, "AEDPA review is 'doubly deferential[,]' . . . [as] federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (citations omitted).

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Thus, under the prejudice inquiry, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. Id. at 695.

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one. Id. at 697. For example, if the Court determines the defendant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient. Id.

At the forefront, the undersigned must note that 28 U.S.C. § 2254(e) governs factual findings of the state courts:

> 1. In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> 2. If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

    a.  the claim relies on—

        i.  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        ii.  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    b.  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). "[A] habeas petition is generally entitled to such a hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." <u>Sawyer v. Hofbauer</u>, 299 F.3d 605, 611 (6th Cir. 2002) (quoting <u>Stanford v. Parker</u>, 266 F.3d 442, 459 (6th Cir. 2001)) (internal quotations omitted). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474; *see also* <u>Posey v. Woods</u>, No. 2:12-CV-10655, 2012 U.S. Dist. LEXIS 100259, at *3-4 (E.D. Mich. July 19, 2012) ("An evidentiary hearing is not required where the record is complete or if the petition raises only legal claims that can be resolved without the taking of additional evidence.") (citations omitted).

Considered first, Odom partially waived any claims for ineffective assistance of counsel, specifically as they relate to the opening statement, examination of witnesses, Odom testifying, and closing argument, as Odom elected to represent himself in those areas (*see* DN 18-2 PageID 143, 148, 181-82). Under the agreement, counsel would be responsible for voir dire and "[m]aking appropriate motions and evidentiary objections throughout the trial" (Id. at PageID 182). Thus, even under the hybrid representation agreement, Odom can still assert this claim. *See* Wagner v. Commonwealth, 483 S.W.3d 381, 384 (Ky. Ct. App. 2015) ("[A] defendant who exercises hybrid representation is entitled to assert a claim of ineffective assistance of counsel, but only with regard to those portions of representation which were explicitly undertaken by trial counsel.").

Turning to the factual findings, an evidentiary hearing is not necessary for this claim. The factual determinations of the Kentucky Court of Appeals are presumed to be correct, 28 U.S.C. § 2254(e)(1), and Odom's offering of rehashed assertions of what he believes the record says is insufficient to surpass the threshold of clear and convincing evidence. While Odom presents similar arguments, with slight changes in how counsel purportedly denied the singular charge, the Kentucky Court of Appeals found Odom's arguments to be based upon an incorrect reading of the record, and instead, counsel stated, "Mr. Butler mentioned intimidating witness in legal process. Mr. Odom denies that charge." Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *18-19 (Ky. Ct. App. Jan. 3, 2020). Even then, after Odom objected to his counsel's statement, counsel then clarified that Odom denied all the charges. Id. at *19. By counsel not conceding guilt in any manner, and reiterating that Odom was not conceding guilt for any charge, Odom has not shown that counsel was deficient under this claim. Additionally, Odom

has presented no arguments of prejudice, especially prejudice that would undermine confidence in the outcome of the proceedings.

Therefore, an evidentiary hearing is unwarranted in this matter, Odom has not met the requirements to show ineffective assistance of counsel under <u>Strickland</u>, and the Kentucky Court of Appeals' determination was not contrary to, or an unreasonable application of, clearly established law.  As such, Odom is not entitled to relief under this claim.

Claims Eleven and Twelve

As both claims focus on the same conduct at the same time, claims eleven and twelve will be considered simultaneously.  Odom's eleventh claim argues that his trial counsel provided ineffective assistance by failing to object to the proposed jury instruction for second degree assault (DN 1 PageID 9; (DN 29 PageID 741).  The twelfth claim similarly argues that counsel did not object to a variance of the second-degree assault in the jury instructions (<u>Id</u>.). As a result of these purported failures to object, Odom contends that he was convicted under a lower *mens rea*, which allowed for multiple theories of guilt for a non-unanimous verdict (DN 29 PageID 742, 745).

Defendant simply claims that the Kentucky Court of Appeals properly "determined that counsel actually did object to the instructions as desired by Mr. Odom" but the trial court overruled the objection (DN 18 PageID 130).  Further, Defendant contends that trial counsel's actions were not ineffective under <u>Strickland</u> (<u>Id</u>.).

The Kentucky Court of Appeals considered both of these claims together as well.  <u>Odom v. Commonwealth</u>, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *19-20 (Ky. Ct. App. Jan. 3, 2020).  Ultimately, the court found that "[c]ounsel tendered proposed jury instructions on Odom's behalf which specifically limited the *mens rea* for this charge to an

intentional act, thereby excluding an instruction which also included a wanton *mens rea*." <u>Id.</u> at *20. "Moreover, the instruction given, which included the wanton *mens rea*, was supported by evidence presented at trial and did not impermissibly add to the indictment which charged Odom with second-degree assault under KRS 508.020, as the instruction given mirrored the language of the statute." <u>Id.</u> (footnotes omitted).

As previously mentioned above, to establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. For prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

Here, Odom's trial counsel filed proposed jury instructions, which included instructions for extreme emotional disturbance, lesser included offenses, murder, manslaughter in the first and second degree, assault in the second and fourth degree, assault under extreme emotional disturbance, second and third degree criminal mischief , and intimidating a participant in the legal process (DN 18-2 PageID 152-180). Included in the initial motion to submit the proposed instructions contained the line, "The defendant objects to any instructions other than these being submitted to the jury and wished to preserve for appellate review any jury instruction issue" (<u>Id.</u> at PageID 152). Odom's trial counsel did exactly as Odom requested.

Odom's indictment, specifically Count Two, charges Odom with "commit[ing] the offense of Assault in the Second Degree by intentionally causing physical injury to Amy Mott, by means of a deadly weapon or instrument" (Id. at PageID 135).  When looking at KRS § 508.020, the statutory definition of assault in the second degree reads as follows:

1. A person is guilty of assault in the second degree when:

 a. He intentionally causes serious physical injury to another person; or

 b. He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

 c. He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument

KRS § 508.020(1).  The charged conduct, and the jury instructions presented to the jury both mirror the language of the statute.  However, Odom's primary contention is the inclusion of the jury instruction to encapsulate § 508.020(1)(c) and the wantonly *mens rea*.  The instruction presented to the jury read:

You will find the Defendant, Glenn Odom, guilty of Assault in the Second Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in Jefferson County, Kentucky, on or about July 20, 2004, he inflicted an injury upon Amy Mott by striking her with a handgun;

AND

B. That in doing so:

i.      He intentionally caused a serious physical injury to
        Amy Mott;

OR

ii.     He intentionally caused a physical injury to Amy
        Mott and the handgun was a dangerous instrument as
        defined in Instruction No. 6;

OR

iii.    He wantonly caused a serious physical injury to Amy
        Mott and the handgun was a dangerous instrument as
        defined in Instruction No. 6.

(DN 18-2 PageID 199).

"An indictment by a grand jury, which is itself a right guaranteed by the Constitution in federal prosecutions, also protects two other constitutional rights-the Sixth Amendment right to fair notice of the criminal charges against a defendant and the Fifth Amendment's 'protection[] against twice placing a defendant in jeopardy for the same offense.'" United States v. Hynes, 467 F.3d 951, 961 (6th Cir. 2006) (citing United States v. Combs, 369 F.3d 925, 935 (6th Cir. 2004)). After an indictment has been returned, "its charges may not be broadened through amendment except by the grand jury itself[,]" and "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 215-17 (1960). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." Watson v. Jago, 558 F.2d 330, 334 (6th Cir. 1977) (quoting Gaither v. United States, 413 F.2d 1061, 1071 (D.C. Cir. 1969)).

In contrast, "[a] variance occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." Id. at 334 (quoting Gaither, 413 F.2d at 1071). "This distinction between an amendment and a variance is critical because a variance is subject to the harmless error rule, whereas an amendment prohibited by *Stirone* and *Bain* is prejudicial *per se*." Id. at 934 (internal citations omitted). "A variance requires reversal of a conviction 'only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" Hynes, 467 F.3d at 964 (quoting United States v. Barrow, 118 F.3d 482, 488-89 (6th Cir. 1997)).

"There is no general legal requirement that jurors must unanimously agree on a theory of guilt." Tackett v. Trierweiler, 956 F.3d 358, 371 (6th Cir. 2020). "[T]he essential question when examining [any] variance between the indictment and the proof is whether the defendant in fact had fair notice and a fair trial." Fields v. Commonwealth, 219 S.W.3d 742, 747 (Ky. 2007) (quoting Johnson v. Commonwealth, 864 S.W.2d 266, 272 (Ky. 1993) ("He was not mislead, surprised or thrown off guard except insofar as he chose to shoot the gap in reliance on a mere technical defect of which he was fully aware")) (alterations in original).

When looking to Odom's case, Odom was provided ample notice of the assault in the second-degree charge, the charged *mens rea* of intentionally, the statutory *mens rea* of wantonly, and Odom was able to present his defense at trial. Moreover, the prosecution presented testimony from Yolanda Cooper who testified that Odom "pistol-whipped" Amy Mott and introduced photographs of Mott's injuries. Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *3 (Ky. Ct. App. Jan. 3, 2020). Odom was even able to cross-examine

Cooper regarding this testimony. The prosecution's plan was to follow the indictment and present the charge with the intentional *mens rea*. While the inclusion of the wantonly instruction does not perfectly align with the indictment's charge of intentional *mens rea* or the prosecution's presentation of intentional *mens rea*, the inclusion of the instruction did not prejudice Odom's ability to present his defense, was not sprung without ample notice, did not prevent a fair trial, and the language utilized in the instruction mirrored that of the statute.

Therefore, Odom's trial counsel submitted proposed jury instructions and objected to any deviation from the proposed jury instruction, exactly as Odom requested. Further, the inclusion of a wantonly *mens rea* complies with the statutory definition of the charge, and no variance or amendment was present that warranted reversal of the conviction. The Kentucky Court of Appeals' determinations were not contrary to, or an unreasonable application of, clearly established law. Odom's eleventh and twelfth claims are meritless, and no relief should be granted under these claims.

Claim Thirteen

Turning to Odom's most voluminous claim, Odom's thirteenth claim contains five instances of allegedly ineffective assistance of counsel (DN 1 PageID 10). These instances are:

[C]ounsel operating under the actual conflicted stated in Ground One:

1.   failed to file critical pretrial motions,

2.   refused to interview and subpoena witnesses for the defense,

3.   refused to object to the trial court's refusal to permit Odom to place his defense before the jury by complete testimony but by narrative form only failing to preserve the issue for appeal,

4.     refusing to direct examine Odom to adduce relevant facts concerning the circumstances and events leading up to and surrounding the death of Ben Smith, and

5.     failed to object with preservation the trial court's error in denying the jury to question Odom as it permitted the jury to do with all witnesses[.]

(Id.); (DN 29 PageID 746).  Odom, in his reply, details that the three "critical pretrial motions" his counsel should have filed were to move to suppress Yolanda Cooper's transcribed statement, move to dismiss the criminal mischief charge, and move to dismiss the assault in the second degree charge (DN 29 PageID 747-50).  Odom also claims that he requested that his counsel interview Barry Richie, Detective Shawn Seabolt, and the detective who interviewed Eddie Sickles, in addition to subpoenaing several detectives (Id. at PageID 751-54).[7]  As for the specific questions for counsel to ask, Odom claims he requested counsel to ask him five questions on direct examination: 1) Why didn't you turn yourself in?; 2) Why were you charged with escape?; 3) How drunk and high was Yolanda Cooper this night?; 4) Are there any reasons why Barry Richie would be seeking revenge?; 5) What was Eddie Sickles acting like on this night due to alcohol and crack intoxication? (Id. at PageID 758).

The Kentucky Court of Appeals considered each of Odom's claims and found no merit. The analysis of the Court of Appeals' determination is as follows:

Odom alleges that trial counsel was ineffective for his failure to file critical pretrial motions.  Odom asserts that counsel was required to file motions and that Odom requested counsel to move the trial court to suppress the transcribed statement of Yolanda Cooper because the

---

7     While the undersigned acknowledges the initial allegations pertaining to Barry Richie and Detective Seabolt, the allegations of this purported failure to investigate and interview them by trial counsel is not considered in determining the merits of this claim.  *See* "Motion for Leave to Amend", *infra* pp. 87-90.

original recording was unavailable. On December 10, 2007, counsel orally moved the trial court to exclude the transcribed statement of Yolanda Cooper because there were patent errors indicating discrepancies from the original recording, which was unavailable. Nonetheless, Yolanda Cooper testified at Odom's trial, and Odom was given the opportunity to cross-examine her regarding her statement. Thus, he has shown neither attorney error nor prejudice. Odom also claims that he requested counsel move the trial court to dismiss the criminal mischief charge alleging Odom "shot up" Dale Booker's car. However, Odom fails to demonstrate grounds for which counsel could have successfully moved to dismiss this charge prior to trial. Nevertheless, counsel moved for a directed verdict on this charge at trial, which was granted. Therefore, Odom cannot show prejudice by counsel's failure to file the requested motion. Odom further claims that he requested counsel move the trial court to dismiss the charge of second-degree assault of Amy Mott. However, such a motion would have been futile. Evidence presented at trial, through the testimony of Cooper, prevented the trial court from granting a motion for a directed verdict on this charge. Thus, Odom cannot show he was prejudiced by counsel's failure to file the requested motion.

Odom claims that he requested trial counsel independently interview Cooper "about her recollection of the events in an attempt to fill in the missing portions of the transcribed statement, but counsel did not." Odom also claims that counsel's failure to interview Cooper before trial "allowed her to testify without impeachment to a coached version of events." However, it was Odom's sole responsibility to examine witnesses at trial. Therefore, any fault for this alleged error lies with Odom, not counsel. Odom also claims that he wanted counsel to interview "the detective who interviewed Eddie Sickle." Odom provided no name of such a detective in his appellate brief, and no name of such a detective was provided to the trial court in his RCr 11.42 motion. It is well-settled, "vague allegations, including those of failure to investigate, do not warrant an evidentiary hearing and warrant summary dismissal of the RCr 11.42 motion." *Mills v. Commonwealth*, 170 S.W.3d 310, 330 (Ky. 2005), *overruled by Leonard*, 279 S.W.3d 151.

Odom's claim that trial counsel's failure to object to Odom's testifying in narrative form constitutes ineffective assistance of counsel is nonsensical. Under the hybrid representation configuration requested by Odom and ordered by the trial court, Odom was responsible for examination of witnesses and testifying in a narrative fashion, should he choose to do so. Moreover, Odom was not prevented in any way from presenting the proof via his own testimony in a narrative fashion. Therefore, Odom cannot show prejudice on this issue.

Odom further claims that trial counsel's failure to ask Odom questions on direct examination constitutes ineffective assistance of counsel. Again, under the hybrid representation configuration requested by Odom, and ordered by the trial court, Odom was responsible for examination of witnesses and testifying in a narrative fashion, should he choose to do so. Once again, Odom was not prevented in any way from presenting the proof via his own testimony in a narrative fashion. Consequently, Odom cannot show prejudice on this issue.

Odom also alleges that trial counsel's failure to object to the jury's being allowed to question Odom after he testified constitutes ineffective assistance of counsel. While it was counsel's duty to make evidentiary objections throughout trial, Kentucky Rule of Evidence 614(c) provides that "[a] juror may be permitted to address questions to a witness." This rule is permissive rather than mandatory. The trial court acted within its discretion in denying such questioning, particularly in light of the potential that such questions might run afoul of Odom's right against self-incrimination under the Fifth Amendment. Again, Odom had the opportunity to present his proof via narrative testimony and has failed to show how counsel's failure to object to the trial court's decision not to allow the jury to question Odom prejudiced him.

<u>Odom v. Commonwealth</u>, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *21-25

(Ky. Ct. App. Jan. 3, 2020).

As discussed previously, the clearly established precedent is set forth in <u>Strickland v.</u> <u>Washington</u>, 466 U.S. 668 (1984) and its progeny. To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009); <u>Strickland</u>, 466 U.S. at 687. The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In making this assessment, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 690. Further, the Court must determine whether, in light of all the circumstances, counsel's challenged conduct falls outside the wide range of professionally competent assistance. <u>Id.</u> Additionally, the Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u>

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Id.</u> at 691. Thus, under the prejudice inquiry, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. <u>Id.</u> at 695.

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one.  Id. at 697. For example, if the Court determines the defendant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient.  Id.

Starting first with the pretrial motions, Odom has not argued that his counsel orally moved for the trial court to exclude the transcribed statement of Yolanda Cooper, for the exact reasons that Odom asserts.  Odom, 2020 Ky. App. Unpub. LEXIS 2, at *22.  Furthermore, even if the transcribed statement was excluded, Cooper testified at trial, and Odom had the opportunity to cross-examine her regarding her statement.  Since Odom could directly confront Cooper regarding her statement, Odom has not demonstrated that prejudice exists.  Odom is also unable to show prejudice for allegedly failing to move to dismiss the criminal mischief charge related to Dale Booker's vehicle.  The lack of prejudice stems from trial counsel successfully moving for a directed verdict to this charge at trial, and Odom has not argued any cognizable grounds for pretrial dismissal.  See Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *4 n.2 (Ky. Mar. 18, 2010).  While Odom may assert this was a fabrication by Detective Halblieb, Odom does not support this argument with anything more than a citation, but no discussion, to another claim in his petition, a newspaper clipping containing allegations in an unrelated lawsuit, and several pages of the detectives' investigation (DN 29 PageID 750).  Odom's argument to the Kentucky Court of Appeals was almost identical to his argument in his reply (compare DN 18-4 PageID 567 with DN 29 PageID 749-50).  Finally, looking at the third motion, Odom, again, does not provide a cognizable claim to dismiss the assault charge.  While Odom claims that Amy Mott told law enforcement that she was not assaulted by Odom, Mott was not the

witness who substantiated the charge. Instead, Yolanda Cooper was the witness who testified at trial about the incident. Thus, if trial counsel had filed such a motion, it would have been futile. Therefore, no prejudice resulted from the non-filing of the motion. As such, the Kentucky Court of Appeals' determination regarding the first subclaim of Odom's argument was not contrary to, or an unreasonable application of, clearly established law.

Next, the undersigned turns to the purported ineffective assistance to interview and subpoena. At the forefront, the undersigned notes that Odom never argued the use of the subpoena power to the Kentucky Court of Appeals. In his brief to the Court of Appeals, Odom's argument solely relates to counsel's purported error for not interviewing the requested people (DN 18-4 PageID 568-69). Moreover, the hybrid representation agreement left the vast majority of strategy and preparation in Odom's hands, as trial counsel only had to conduct voir dire and make appropriate motions and objections throughout trial (DN 18-2 PageID 182). This leaves the ability to interview witnesses, detectives, or any other person, in addition to subpoenaing witnesses to trial, as Odom's responsibility. As this was Odom's responsibility, "any fault for this alleged error lies with Odom, not counsel." Odom, 2020 Ky. App. Unpub. LEXIS 2, at *23. While Odom may cite English v. Romanowski, 602 F.3d 714 (6th Cir. 2010), and Reynoso v. Giurbino, 462 F.3d 1099 (9th Cir. 2006), as a showing of ineffective assistance, both of these cases are inapplicable. In both cases, the defendants were represented by counsel and did not have a hybrid representation agreement. See English, 602 F.3d at 719; Reynoso, 462 F.3d at 1107-08. According to the hybrid representation agreement, Odom was the person responsible for the examination of witnesses (DN 18-2 PageID 181). Therefore, Odom cannot show that his trial counsel conducted deficient performance or caused prejudice in a task that was not his responsibility. As such, the Court of

Appeals' determination on this subclaim was not contrary to, or an unreasonable application of, clearly established law.

Third, Odom argues that his trial counsel should have objected to the narrative format for Odom's testimony (DN 29 PageID 756). The Kentucky Court of Appeals labelled Odom's subclaim as "nonsensical." Odom, 2020 Ky. App. Unpub. LEXIS 2, at *24. Odom is entirely correct when stating that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." Harris v. New York, 401 U.S. 222, 225 (1971). However, Odom's argument that his constitutional rights were violated based upon his inability to testify without restriction or condition is incorrect. As the Court of Appeals correctly stated, "Odom was not prevented in any way from presenting the proof via his own testimony in a narrative fashion." Odom, 2020 Ky. App. Unpub. LEXIS 2, at *24. Even if Odom later decided that he did not wish to testify, he would not be compelled to, just like the Fifth Amendment proclaims and is emphasized in Harris. The hybrid representation agreement, which Odom requested (DN 18-2 PageID 143-45, 146-47), stated that Odom would testify in a narrative fashion "should [h]e elect to testify" (Id. at PageID 181). Therefore, Odom cannot show any prejudice by this alleged failure to object, and the Kentucky Court of Appeals' determination aligns with, and reasonable applies, clearly established Supreme Court precedent.

Moving to the penultimate subclaim, Odom's claim that his trial counsel should have asked questions on direct examination does not comport with the hybrid representation agreement. As just explained, Odom was permitted to testify in a narrative fashion (Id.), and he did not require his trial counsel to ask questions to adduce relevant facts. Instead, Odom could elicit the facts himself, provided the testimony complied with the rules of evidence. Trial counsel's responsibility

was solely to conduct voir dire and to make appropriate motions and objections (Id.). As Odom was not prevented from eliciting the information through his narrative testimony, and trial counsel's responsibilities did not include direct examination of Odom, there is no prejudice from this lack of questioning. The Kentucky Court of Appeals' determination is not contrary to, or an unreasonable application of, clearly established law.

Finally, Odom argues that the jury should have been able to ask Odom questions regarding his testimony, similar to what occurred to other witnesses (DN 29 PageID 759). Odom claims this denial "constructively denied Odom his unqualified right to testify" (Id.). Kentucky Rule of Evidence 614(c) states, "A juror may be permitted to address questions to a witness by submitting them in writing to the judge who will decide at his discretion whether or not to submit the questions to the witness for answer." This determination is discretionary, and the Court of Appeals notes the potential risk "that such questions might run afoul of Odom's right against self-incrimination under the Fifth Amendment." Odom, 2020 Ky. App. Unpub. LEXIS 2, at *25. As just discussed, Odom was not prevented from introducing any relevant information, provided the information complied with the rules of evidence, when he testified in a narrative fashion. Odom quotes McKaskle v. Wiggins, which states, "The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." 465 U.S. 168, 174 (1984). While Odom may claim that the ability to "address the court and the jury at appropriate times" pertains to jurors questioning Odom following his testimony, this, in actuality, relates to opening statements and closing arguments, which Odom was able to conduct. *See generally* (DN 18-2 PageID 181).

By the trial court declining to allow jurors to submit questions to the court to pose to Odom, the trial court was exercising discretion in the interest of protecting Odom's constitutional rights. Odom was provided a "meaningful opportunity to present a complete defense" by calling and examining witnesses, cross-examining the Commonwealth's witnesses, having trial counsel make evidentiary objections, and Odom testifying in a narrative fashion. *See* Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Ky., 476 U.S. 683, 690 (1986)). As such, Odom's argument is without merit, as he has not presented sufficient evidence to show that the Court of Appeals' determination was contrary to, or an unreasonable application of, clearly established law.

In conclusion, after considering each sub-claim of Odom's argument, the Kentucky Court of Appeals' determinations were not contrary to, or an unreasonable application of, clearly established law. Therefore, Odom should be awarded no relief under this claim.

Claim Fourteen

Odom contends that Detective Halblieb committed perjury while testifying before the grand jury and counsel should have, but did not, move for a mistrial and preserve the issue for appeal (DN 1 PageID 11; DN 29 PageID 762). Tandem, Odom also argues a due process violation by the prosecution utilizing testimony before the grand jury that it knew was perjured (DN 29 PageID 765). Further, Odom argues that the error was not harmless (Id. at PageID 767).

Defendant responds to the accusations with three points: 1) Detective Halblieb did not commit perjury before the grand jury; 2) Odom had the opportunity to question Detective Halblieb regarding his grand jury testimony; and 3) the Kentucky Court of Appeals properly found no prejudice derived from this claim (DN 18 PageID 131).

The Court of Appeals found that Odom's "assertion concerning Detective Halblieb's testimony about Mott's identification of Odom is inaccurate." Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *26 (Ky. Ct. App. Jan. 3, 2020). Further, "Detective Halblieb testified at trial that Mott's identification of Odom had to do with the events of the night in question in general, not solely relating to who had pistol-whipped her— Cooper offered testimony on that issue." Id. at *27. As for the testimony about shooting Booker's car, Odom assertion "[was] also inaccurate." Id. "Detective Halblieb testified at trial that there were no eyewitnesses who corroborated his grand jury testimony that Odom shot Booker's car[, but] . . . he believed his statements to the grand jury to be true at that time, based upon the timing and location of events, coupled with his belief, upon investigation, that Odom had a gun which he used to kill a man and pistol-whip Mott, along with the facts - which Odom admitted at trial - that Odom also defaced, destroyed, or damaged the residence and car of another victim." Id. at *28. Finally, the Court of Appeals found Odom's third assertion, specifically regarding Odom "shooting up people's houses," was also inaccurate. Id. The Court stated that this information was "not material to the indictment as there was no corresponding charge for Odom shooting at any house(s)." Id. at *29. Thus, Odom could not show that Detective Halblieb committed perjury, "that any of the alleged perjury was material, that the Commonwealth was aware of the alleged perjury, or that jeopardy had not attached at the time the alleged perjury was discovered[,]" so "counsel's failure to move for a mistrial . . . did not prejudice Odom or otherwise constitute ineffective assistance of counsel." Id.

For almost a century, the Supreme Court of the United States has continually reaffirmed that "deliberate deception of a court and jurors by the presentation of known false evidence is

incompatible with [the] 'rudimentary demands of justice.'" <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972) (quoting <u>Mooney v. Holohan</u>, 294 U.S. 103, 112 (1935)). A denial of due process also exists when the prosecutor allows false evidence or testimony to go uncorrected. <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). "A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the [prosecution] has the responsibility and duty to correct what he knows to be false and elicit the truth. . . . That the [prosecution]'s silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair." <u>Id.</u> at 269-70 (quoting <u>People v. Savvides</u>, 136 N.E.2d 853, 854-55 (N.Y. 1956)). "[T]he Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." <u>United States v. Basurto</u>, 497 F.2d 781, 785-86 (9th Cir. 1974).

The Supreme Court has also made "clear that the supervisory power [of the courts] can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions[.]" <u>United States v. Williams</u>, 504 U.S. 36, 46 (1992) (quoting <u>United States v. Mechanik</u>, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment); <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250 (1988)). But a court "may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." <u>Bank of Nova Scotia</u>, 487 U.S. at 254. This standard only finds dismissal appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict

was free from the substantial influence of such violations." Id. at 256 (quoting Mechanik, 475 U.S. at 78) (internal quotations omitted).

"Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence." Lyons-Bey v. Campbell, No. 5:16-CV-13797, 2018 U.S. Dist. LEXIS 23994, at *36 (E.D. Mich. Feb. 14, 2018) (citing Barnett v. United States, 439 F.2d 801, 802 (6th Cir. 1971)); see generally Tucker v. United States, 423 F.2d 655, 656 (6th Cir. 1970) ("These are pure conclusory statements and in the absence of any allegations in his motion and particularly specific allegations . . . we would not give them credence."). Additionally, "where as here, [Odom]'s allegations and conclusions when read in the light of the entire record do not even raise a significant question of fact as to the alleged use of perjured testimony, the [undersigned] need not accord [Odom] a hearing on those allegations." Barnett, 439 F.2d at 802 (citations omitted).

Odom was correct in acknowledging that no conviction was found for the criminal mischief charge as it related to Esther McWhorter's vehicle (DN 29 PageID 767). Instead, the trial court granted a motion for a directed verdict. Odom v. Commonwealth, No. 2008-SC-000272-MR, 2010 Ky. Unpub. LEXIS 30, at *4 n.2 (Ky. Mar. 18, 2010). Turning to the allegations in Odom's petition, Odom first claims that Detective Halblieb testified to the grand jury that Amy Mott had positively identified Odom as the assailant who pistol-whipped her (DN 29 PageID 763). Next, Detective Halblieb purportedly testified that "Odom went to Dale Booker's house and shot-up her car" (Id.). Finally, Odom alleges that Detective Halblieb testified "Odom was shooting-up people's houses" when no houses were fired upon (Id.).

The grand jury testimony provided by Odom shows Detective Halblieb testifying to the events of July 20, 2004, as a whole (DN 29-4 PageID 798). This testimony, in a continuous,

uninterrupted statement, discussed the homicide, the events leading up to the homicide including an argument between Odom and the victim about cocaine, the disposal of the victim's body, Odom's subsequent actions at Booker's residence, Odom's actions at Esther McWhorter's residence, and the assault on Mott (Id.). After discussing all these events, the prosecution asked if "she was able to identify him also" (Id.), to which Detective Halblieb stated, "Yes, there was, uh, three photo packs, uh, shown and he was ID'd in all three photo packs" (Id.).

As the Kentucky Court of Appeals noted, Detective Halblieb's grand jury testimony does not match what Odom asserts. Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *26-27 (Ky. Ct. App. Jan. 3, 2020). "Detective Halblieb testified at trial that Mott's identification of Odom had to do with the events of the night in question in general, not solely relating to who had pistol-whipped her – Cooper offered testimony on that issue." Id. Furthermore, Odom was ultimately convicted of the charge stemming from the pistol-whipping— assault in the second degree—which makes any alleged error, if any error even occurred, "harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); United States v. Goldsby, 125 F. Appx. 687, 690 (6th Cir. 2005) ("We will not reverse a criminal conviction on the basis of error in the grand jury proceedings where the alleged error was harmless.").

As to the second statement, Odom's recounting of Detective Halblieb's testimony is incorrect. Detective Halblieb told the grand jury, "After [shooting the victim] [Odom] then

proceeded to, um, Ms. Booker's residence, which is another victim. He, uh, displayed a handgun and shot at her vehicle several times" (DN 29-4 PageID 798). The undersigned notes, as the Kentucky Court of Appeals did, that Odom admitted to the facts at trial where he defaced, destroyed, or damaged the residence and car of another victim." Odom, 2020 Ky. App. Unpub. LEXIS 2, at *28. Further, "Detective Halblieb also testified at Odom's trial that he believed his statements to the grand jury to be true at that time, based upon the timing and location of events, coupled with his belief, upon investigation, that Odom had a gun which he used to kill a man and pistol-whip Mott[.]" Id. This does not show the necessary intent to mislead the prosecution or the grand jury to indict, which would result in perjury. Rather, Detective Halblieb's testimony appears to be a recitation of facts and evidence compiled during an intensive investigation that led to that conclusion at the time. Thus, Odom does not make a showing for perjury.

Finally, Odom's last argument is inapplicable. The relevant testimony provided by Detective Halblieb reads as follows: "And then it went on from there, he started shooting up peoples [sic] houses, breaking windows 'cause they all witnessed the homicide, or were witnesses to the argument before the homicide" (DN 29-4). While Odom claims that no homes were shot, and that amounts to perjury, Odom has failed to show the statements were even material. Odom was never charged for any of those acts, besides the two previously discussed charges upon which there was no perjury. Even if the statements were false, *arguendo*, Odom was never prejudiced by the statements. *See generally* United States v. Lazaros, 480 F.2d 174, 177 (6th Cir. 1973) ("The test of materiality is 'whether the false testimony was capable of influencing the tribunal on the issue before it.' . . . Furthermore, 'materiality refers to testimony that will legally evidence the propositions to be proved.'"); *see also* United Statews v. Gaudin, 515 U.S. 506, 509 (1995)

(quoting <u>Kungys v. United States</u>, 485 U.S. 759, 770 (1988)) ("[T]he definition of 'materiality': The statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'").  As Detective Halblieb's testimony did not influence the grand jury to indict for a charge related to the alleged conduct, no materiality exists.  With no materiality, no perjury exists.

Therefore, just as the Kentucky Court of Appeals found, Odom has not presented evidence to satisfy a showing of perjury before the grand jury by Detective Halblieb, let alone whether the Commonwealth was aware of the alleged perjury, or that jeopardy had not attached at the time the alleged perjury was discovered.  <u>Odom</u>, 2020 Ky. App. Unpub. LEXIS 2, at *29.  As such, the failure to move for a mistrial by trial counsel, as a result of Detective Halblieb's grand jury testimony, does not fall into deficient performance, nor does it prejudice Odom.  *See* <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Accordingly, the determination by the Kentucky Court of Appeals was not contrary to, or an unreasonable application of, clearly established law, and Odom should be awarded no relief under this claim.

Claim Fifteen

Odom's penultimate claim is the first and only which pertains to Odom's appellate counsel, and it centers upon a failure to "master the record" and to bring certain unpreserved claims on direct appeal as palpable errors under Ky. R. Crim. P. 10.26.  This argument was presented to the Kentucky Court of Appeals, who found that "Odom ha[d] not satisfied either prong of the *Strickland* test to show ineffective assistance of counsel for failure to present these meritless issues on direct appeal."  <u>Odom v. Commonwealth</u>, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *30-31 (Ky. Ct. App. Jan. 3, 2020).

The two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), applies to claims of ineffective assistance of appellate counsel. Smith v. Murray, 477 U.S. 527, 535 (1986); Goff v. Bagley, 601 F.3d 445, 462-463 (6th Cir. 2010); Bell v. Lockhart, 795 F.2d 655, 657 (8th Cir. 1986). Thus, to establish ineffective assistance of appellate counsel, a movant must show deficient performance and resulting prejudice. Strickland, 466 U.S. at 687. This means the performance inquiry requires the movant to show appellate counsel's representation fell below an objective standard of reasonableness. Id. at 688. Notably, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. The prejudice inquiry requires the defendant to show that there is a reasonable probability that, but for appellate counsel's unprofessional error, the result of the appeal would have been different. Id. at 694-95.

Since discarding weaker arguments on appeal and focusing on those more likely to prevail is a hallmark of effective appellate advocacy, Smith v. Murray, 477 U.S. 527, 536 (1986), the failure of appellate counsel to assert five additional claims of ineffective assistance of trial counsel, not including sub-claims, does not fall outside the wide range of professional competent assistance. Strickland, 466 U.S. at 690. Petitioner must show that counsel's refusal to raise a requested claim on appeal was ineffective assistance of counsel. Id.; Smith v. South Carolina, 882 F.2d 895 (4th Cir. 1989), cert. denied, 493 U.S. 1046 (1990). An attorney need not raise on appeal every non-frivolous issue requested by the defendant. Jones v. Barnes, 463 U.S. 745 (1983); Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117 (4th Cir. 1989), cert. denied, 497 U.S. 1010 (1990); Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985), cert. denied, 478 U.S. 1007 (1986).

Here, Odom has not presented sufficient evidence that would show the result would have been different. Instead, the circumstances present fall into the category of discarding weaker arguments to focus on claims more likely to prevail. This is even shown by appellate counsel obtaining a reversal of two convictions. <u>Odom</u>, 2010 Ky. Unpub. LEXIS 30, at *13-14. Moreover, as the state courts found, "[i]neffective assistance of counsel claims in Kentucky are appropriately raised for the first time on collateral review, rather than on direct appeal." <u>Hodge v. Haeberlin</u>, 579 F.3d 627, 643 (6th Cir. 2009). Therefore, when viewing the Kentucky Court of Appeals' determination is not contrary to, or an unreasonable application of, clearly established law. As such, relief should not be granted under this claim.

Claim Sixteen

Finally, Odom's last claim for relief returns to claims against his trial counsel. Specifically, Odom claims his counsel provided ineffective assistance of counsel when "counsel refused to ask jurors any of Odom's questions during voir dire, refused to object when Odom was denied his right to attend bench conferences, and refused to object when all of Odom's pretrial motions were ignored by the court" (DN 29 PageID 771). Odom lists five *pro se* motions that were allegedly ignored by the trial court: 1) a motion to suppress Yolanda Cooper's testimony, 2) a motion to dismiss the criminal mischief charge related to Dale Booker's vehicle, 3) a motion to dismiss the assault in the second degree charge, 4) a motion to dismiss or suppress the intimidating a participant in the legal process charges, and 5) a motion to dismiss the indictment for violating Odom's right to a speedy trial (<u>Id.</u> at PageID 772-73). Odom also argued he was prevented from conducting voir dire *pro se*, and, when trial counsel ultimately led voir dire, trial counsel refused to ask jurors questions that Odom specifically requested (<u>Id.</u> at PageID 773-75). Finally, Odom

believed he was entitled to attend bench conferences, and his exclusion from them "implicates [the] Sixth Amendment right to be represented by counsel at all critical stages of a criminal proceeding" (Id. at PageID 775-76) (citing Allen v. Commonwealth, 410 S.W.3d 125 (Ky. 2013)).

The Kentucky Court of Appeals disposed of Odom's claim because "[a]s an initial matter, although Odom alleges that counsel refused to ask Odom's questions during *voir dire*, no proof has been offered that Odom ever requested counsel to ask such questions. . . . Odom has failed to show prejudice to establish ineffective assistance of counsel on this claim." Odom v. Commonwealth, No. 2017-CA-000193-MR, 2020 Ky. App. Unpub. LEXIS 2, at *31 (Ky. Ct. App. Jan. 3, 2020). Further, the Court of Appeals continued as follows:

> Also, under the hybrid representation configuration ordered by the trial court, counsel was responsible for making appropriate motions and evidentiary objections throughout the trial. Attending the bench conferences is an integral part of this task. Thus, counter to Odom's assertions, he was not unrepresented at bench conferences. Finally, Odom has not identified a single pretrial motion which was ignored by the trial court.

Id. at *31-32. The Court refused to "search the record to construct Odom's argument for him, nor [would the Court] go on a fishing expedition to find support for his underdeveloped arguments." Id. at *32.

A state prisoner must first "fairly present" his constitutional claims to the state courts, to provide them an opportunity to remedy the alleged constitutional infirmity before federal habeas corpus review is available. Castille v. Peoples, 489 U.S. 346, 349-51 (1989). The petitioner has the burden of proving exhaustion. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994); Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir.), *cert. denied*, 113 S.Ct. 347 (1992).

The exhaustion requirement provides the State the "opportunity to pass upon and correct" the alleged violations of the prisoner's federal rights. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotations omitted) (citations omitted); Teague v. Lane, 489 U.S. 288, 297-299 (1989); Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). To provide the State with this necessary "opportunity," the prisoner must "fairly present" his federal rights claims "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature" of each claim. Baldwin, 541 U.S. at 29.

A federal rights claim is "fairly presented" to each state court if the petitioner's state-court motion, petition, memorandum or brief cites in conjunction with the claim (1) the federal source of law upon which he relies; (2) a federal or state cases deciding such a claim on federal grounds; or (3) by simply labeling the claim "federal." Baldwin, 541 U.S. at 32; see also Franklin v. Rose, 811 F.2d 322, 325 (6th Cir. 1987); Daye v. Attorney Gen., 696 F.2d 186, 193-194 (2d Cir. 1982). The "mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim." Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir. 1984).

The exhaustion requirement is satisfied when the last court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on all of petitioner's claims. See Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990).

At the forefront of this claim, Odom argues that "he **clearly** incorporated all grounds in his initial Rcr [*sic*] 60.02 and [several issues] in his initial Rcr [*sic*] 11.42 which referenced the facts and citations to the record, of questions for counsel to ask on voir dire and motions that were ignored by the court" (DN 29 PageID 772) (emphasis in original, internal quotations omitted);

*see* (DN 18-4 PageID 576).  While Odom may have asserted incorporation of his previous filings into his brief, that is not the proper method of asserting claims before the appellate courts. "Reviewable issues are limited to those presented in [appellant]'s brief; the remaining issues are deemed abandoned."  <u>Nesbitt v. McMackin</u>, Nos. 89-3328, 89-3330, 1990 U.S. App. LEXIS 1339, at *4 (6th Cir. Feb. 1, 1990); <u>Milby v. Mears</u>, 580 S.W.2d 724, 727 (Ky. Ct. App. 1979) ("Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors.").   The Kentucky Court of Appeals' determination was compatible with this Circuit's precedent, as "it is not for the court to search the record and construct arguments.  Parties must do that for themselves."  <u>Brenay v. Schartow</u>, 709 Fed. App'x 331, 337 (6th Cir. 2017) (citing <u>Magnum Towing & Recovery v. City of Toledo</u>, 287 Fed. App'x 442, 449 (6th Cir. 2008).  "And while it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so."  <u>Id.</u>

Looking to Odom's appellate brief, the undersigned confirms that Odom never notes the specific questions counsel should have asked, or that he even requested counsel to ask, nor has Odom identified any pretrial motions that were ignored (DN 18-4 PageID 575-77).  Odom's reply brief does not address these issues either (<u>Id.</u> at PageID 592-600).  As such, Odom did not fully and fairly present the issue to the Kentucky Court of Appeals.

Furthermore, as the Kentucky Court of Appeals already noted, the hybrid representation agreement stated that Odom's trial counsel would be responsible for voir dire and making appropriate motions and evidentiary objections (DN 18-2 PageID 182); *see also* (DN 29 PageID 747).  Thus, Odom's pretrial motions fell outside the scope of the agreement, even if he had presented specific motions to the Court of Appeals.   Additionally, attendance at bench

conferences is incorporated within the actions of making appropriate motions and objections. As such, the hybrid agreement requires trial counsel's attendance at the bench conferences, and Odom was not unrepresented during the conferences. Thus, the determinations by the Kentucky Court of Appeals is compatible with, not contrary to or an unreasonable application of, clearly established law. In conclusion, Odom should be awarded no relief under this claim.

## Certificate of Appealability

In <u>Slack v. McDaniel</u>, the Supreme Court established a two-pronged test that is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on procedural grounds. 529 U.S. 473, 484-485 (2000). To satisfy the first prong of the <u>Slack</u> test, Odom must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." <u>Id.</u> at 484. To satisfy the second prong, Odom must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Notably, the Court need not conduct the two-pronged inquiry in the order identified or even address both parts if Odom makes an insufficient showing on one part. <u>Id.</u> at 485. For example, if the Court determines Odom failed to satisfy the procedural prong then it need not determine whether the constitutional prong is satisfied. <u>Id.</u> In contrast, when the Court rejects a claim on the merits, Odom must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. <u>Id.</u>

For the reasons articulated in each claim addressed on the merits, reasonable jurists would not find it debatable whether the petition states a valid claim of the denial of a constitutional right. For the reasons articulated in each claim addressed on a procedural basis, reasonable jurists would not find it debatable whether the recommended procedural ruling is correct. Therefore, the

undersigned does not recommend issuance of a Certificate of Appealability as to Odom's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Conclusion as to Odom's Claims

In conclusion, based upon the aforementioned analysis, no evidentiary hearing is necessary, and Odom is not entitled to relief under any claim of error. Therefore, the undersigned **RECOMMENDS** that the Court **DENY** Odom's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (DN 1).

Motion for Expert Testimony and Appoint Counsel

The undersigned will now consider Odom's motion "to permit expert testimony and . . . to appoint counsel" (DN 30). According to Odom, the video footage of voir dire appears to skip during a period of time when Odom claims that his counsel "conced[ed] guilt" to a venire of forty-three potential jurors (Id. at PageID 855). While the Warden "continuously claims that [Odom's] counsel never said what [Odom] asserts[,]" Odom argues that no party—whether it be the court, prosecutor, or even Odom's own counsel—has informed Odom "that he was incorrect or mistaken" (Id. at PageID 855-56). Additionally, Odom claims the video footage contains a "quick white flash" when his counsel concedes guilt and his counsel's positioning changes, which shows missing footage (Id. at PageID 856). Odom "wishes to hire his own expert to opine on if the video footage has been altered" (Id.). It is Odom's proposition that, absent an expert opinion, the courts may not adequately and fairly rule on ground ten of the petition (Id.). Additionally, "[i]f the court determines that any of [Odom]'s issues warrant an evidentiary hearing[,]" Odom requests that he is appointed counsel (Id. at PageID 857).

Since a habeas corpus proceeding is civil in nature, petitioners do not have a constitutional right to counsel. Pennsylvania v. Finley, 481 U.S. 551, 555-556 (1987). Habeas petitioners are entitled to appointment of counsel under 18 U.S.C. §3599(a)(2) when they are seeking to set aside a death sentence. However, Odom is not seeking to set aside a death sentence. For habeas petitioners such as Odom, appointment of counsel is mandatory only when an evidentiary hearing is warranted, and the petitioner financially qualifies to have counsel appointed under 18 U.S.C. §3006A. Rule 8(c) of the Rules Governing Section 2254 habeas cases; Wood v. Wainwright, 597 F.2d 1054 (5th Cir. 1979). Where no evidentiary hearing is necessary, the appointment of counsel is discretionary, and the court considers the legal complexity of the case, the factual complexity of the case, and petitioner's ability to investigate and present claims, along with any other relevant factors. Gammalo v. Eberlin, No. 1:05CV617, 2006 WL 1805898, at *2 (N.D. Ohio June 29, 2006) (citing Hoggard v. Prukett, 29 F.3d 469, 471 (8th Cir. 1994)).

As previously discussed above, an evidentiary hearing is not required in this case (*see supra* pp. 57-59). Since an evidentiary hearing is not required, no expert testimony is required. As the circumstances presented in this petition are not unusual and an evidentiary hearing is not required, Odom is not entitled to appointment of counsel.

Motion for Leave to Amend

On May 17, 2021, Odom submitted his Memorandum of Law Reply to his petition for writ of habeas corpus (DN 29). Three months later, on August 19, 2021, Odom then files a motion to amend the petition (DN 31). In the motion for leave to amend, Odom requests a thirty-day extension to amend his reply memorandum to remove discussions of Detective Seabolt and Barry Richie from Claim Thirteen, sub-claim two (Id. at PageID 862). Odom asserts that his

"memorandum reply contained arguments/issues not exhausted in the state Appellate Court" and was uncertain whether the inclusion of this sub-claim in his reply would create a "mixed petition" and "would warrant this court to reject the petition in total" (Id. at PageID 861).

A state prisoner must first "fairly present" his constitutional claims to the state courts, to provide them an opportunity to remedy the alleged constitutional infirmity before federal habeas corpus review is available. Castille v. Peoples, 489 U.S. 346, 349-51 (1989). "[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." Rhines v. Weber, 544 U.S. 269, 273 (2005) (citing Rose v. Lundy, 455 U.S. 509 (1982)). In Rhines, the Supreme Court considered, and ultimately upheld, a district court's grant of a stay, provided good cause for the failure to exhaust, while the petitioner exhausted his issues in the state courts. Id. at 277-79. Instead of this relief, Odom merely seeks to amend his reply to retract his argument regarding one specific sub-claim of a claim.

It has been routinely held:

> Under Rule 15(a), leave to amend a pleading shall be freely given when justice so requires. This court has explained the factors that a district court should consider when deciding whether to grant leave to amend. Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

Coe v. Bell, 161 F.3d 320, 341-42 (6th Cir. 1998) (quoting Brooks v. Celeste, 39 F.3d 125, 130 (6th Cir. 1994)); see also 28 U.S.C. § 2242 para. 3 (an application for a writ of habeas corpus "may

be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Additionally, the Sixth Circuit has interpreted the language in Rule 15(a)(2) as setting forth a "liberal policy of permitting amendments to insure the determination of claims on their merits." Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (quoting Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)).  The Court in Rhines has stated that when the dismissal of a petition to exhaust the issues in the state courts would unreasonably impair the petitioner's right to relief, and a stay and abeyance is inappropriate, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims[.]"  544 U.S. at 278.

Odom had brought this allegation in his supplemented RCr 11.42 and CR 60.02 (DN 18-2 PageID 383-84).  But Odom correctly notes that he did not present the specific allegations pertaining to Barry Richie and Detective Seabolt to the Kentucky Court of Appeals (DN 31 PageID 861); *see* (DN 18-4 PageID 566-69, 594-600).  This would create a "mixed petition" which Odom seeks to fix.

Rule 15 of the Federal Rules of Civil Procedure, in tandem to relevant Supreme Court precedent, would dictate that omitting the unexhausted allegations would be pertinent and necessary.  Therefore, the undersigned grants, in part, Odom's motion to amend.  This amendment would only omit approximately a page of Odom's seventy-two-page reply memorandum, leaves Odom's original petition unaltered, and the omission of this information from the reply memorandum would still preserve the substance of sub-claim two of Odom's thirteenth claim: ineffective assistance of counsel for failure to interview and subpoena witnesses.

However, considering that Odom's request to amend would only omit certain allegations, but the substance of the thirteenth claim would still survive, Odom's request for a thirty-day

89

extension of time is denied. As such, the allegations in Odom's reply are omitted and are not considered in the Findings of Fact, Conclusions of Law, and Recommendation. Therefore, Odom's motion for leave to amend (DN 31) is **GRANTED IN PART** and **DENIED IN PART**.

<u>CONCLUSION</u>

For the aforementioned reasons:

(1)   Odom's motion to permit expert testimony and to appoint counsel (DN 30) is **DENIED**;

(2)   Odom's motion for leave to amend his petition for writ of habeas corpus (DN 31) is **GRANTED IN PART** and **DENIED IN PART**;

(3)   The undersigned **RECOMMENDS** the Court **DENY** Odom's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (DN 1); and

(4)   The undersigned **RECOMMENDS** the Court **DENY** issuance of a Certificate of Appealability.

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

August 30, 2021

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and FED. R. CIV. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, objections must be timely filed, or further appeal is waived. <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), *aff'd*, U.S. 140 (1984).

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

August 30, 2021

Copies:        Counsel of Record
               Glenn Odom, *pro se*